(No. 26415.—

PHILIP ROZRAN, doing business as Cannonball Bonded Messenger Service, Plaintiff in Error, *vs.* MARTIN P. DURKIN, Director of Labor, *et al.,* Defendants in Error.

*Opinion filed November 17, 1942.*

DAVID A. WITT, and SAMUEL ARTHUR KARLIN, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, ALBERT E. HALLETT, of counsel,) for defendants in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

Sherman H. Kuehl filed his claim for unemployment compensation with the Department of Labor under the provisions of the Illinois Unemployment Compensation Act, alleging that he was in the employ of the Cannonball Bonded Messenger Service for the period from January 9, 1939, to June 1, 1939, and had earned $378.78 in net wages earned during this period.

The facts show that the Cannonball Bonded Messenger Service was a partnership organization in the general pickup and delivery service. Kuehl made deliveries for Cannonball under an oral agreement by which terms he was to receive 65 per cent of the gross revenue received for the delivery of the packages. He was not required to report to the company at any particular day or at any particular time of the day, but the evidence shows that he reported every morning early in the morning, with the exception of a few mornings when he was snowbound. He was given packages to deliver, which packages were delivered to various points in the city of Chicago and suburbs. At times he would telephone in to the office and receive directions to pick up packages at different places for delivery. He oftentimes collected C. O. D.'s on the packages. He provided his own truck and paid all of the expenses necessary to operate his truck and in making the deliveries.

It is admitted he was not obligated to make deliveries in any particular manner, but the dispatcher for Cannonball would give him whatever packages he saw fit and from day to day his territory, or portion of the city in which deliveries were to be made, would differ. Where possible, he was given packages which would take him in the same

direction at the same time. There was no closing hour, the evidence showing that oftentimes he delivered late into the night. The only requirement was that the deliveries be made with dispatch.

The evidence indicated that Kuehl was at liberty to do trucking for other persons, but never did. His entire time was taken up in deliveries and pickups for Cannonball. He was responsible for any losses of packages. Cannonball, for its protection, however, carried Workmen's Compensation insurance and also insurance against theft. According to Kuehl's figures, it cost him from $7 to $11 per week to maintain his truck. Cannonball had others doing the same work as Kuehl and had some men whom they considered their own employees. The latter were required to report at regular hours and received fixed wages and used company equipment.

The deputy of the Department of Labor disallowed the claim on the ground that the claimant was not an employee of the company and because he had insufficient wage credits to allow him compensation. This finding was reversed by the referee of the Board of Review, and, upon *certiorari,* the circuit court of Cook county quashed the writ and affirmed the ruling of the Board of Review. The writ of error to this court followed.

It is the contention of the plaintiff in error:

1. That Kuehl was not an employee of Cannonball Bonded Messenger Service within the meaning of the Illinois Unemployment Compensation Act.

2. That Kuehl did not earn net wages, after deduction of expenses, in excess of $225 during the base period so as to entitle him to compensation.

The theory of the Department of Labor is:

1. That the claimant was an employee of the plaintiff in error within the meaning of the act, since the provisions of the statute supersede the common-law conception of master and servant and are more broad and inclusive than the generally accepted common-law interpretation.

2. That under the provisions of the act, the wages paid during the base period were sufficient to entitle him to unemployment compensation since the act does not in any of its definitions refer to net wages.

The Unemployment Compensation Act (Ill. Rev. Stat. 1939, chap. 48, par. 218,) at the time of this proceeding provided as follows:

Section 2(f)(1)—

"Subject to the other provisions of this subsection, 'employment' means services, including service in interstate commerce, performed by an individual for an employing unit, and including all services performed by an officer of a business corporation, without regard to whether such services are executive, managerial or manual in nature, and without regard to whether such officer is or is not a stockholder or a member of the board of directors of the corporation."

Section 2(f)(5)—

"Services performed by an individual shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Director that—

"A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"C. Such individual is engaged in an independently established trade, occupation, profession or business."

Section 2(g)—

" 'Wages' means every form of remuneration payable for personal services, whether payable directly or indirectly, including salaries, commissions, bonuses, and the reasonable

money value of all remuneration payable in any medium other than cash. Where gratuities are customarily received by an individual in the course of his work from persons other than his employing unit, such gratuities shall be treated as wages payable by his employing unit. The reasonable money value of remuneration payable in any medium other than cash and the reasonable amount of gratuities shall be estimated and determined in accordance with rules prescribed by the Director. Such rules shall be based upon the reasonable past experience of such individuals, such work and such employing units."

The plaintiff in error to sustain his contention that the term "employee" is to be construed within the ordinary meaning of "employee" under the rules of master and servant and under the Workmen's Compensation Act, has cited several Illinois cases. The two most recent cases cited, *Ferguson & Lange Foundry Co.* v. *Industrial Com.* 346 Ill. 632, and *Meyer* v. *Industrial Com.* 347 id. 172, both admit that the question as to whether one is engaged in service for another as an employee or independent contractor is not always easy of determination. Both cases recognize that the right to control the manner of work is an important consideration and that an unfailing test in determining the master-and-servant relationship is whether the control of the servant includes the power to discharge him. It is likewise said that if one represents the will of the person for whom the work is done only with respect to the result and not the means by which that result is accomplished, then the person doing the work is an independent contractor.

There is no doubt but that these cases represent the common and accepted theory of independent contractor and master and servant. The question here is whether the statute, in accordance with its natural and most obvious import, is to be construed as meaning an employee according to the common law master-and-servant relationship, or

whether a more comprehensive interpretation is to be considered. This question was considered by this court in *Miller, Inc.* v. *Murphy,* 379 Ill. 524, in which it was held: "However, the appellant contends the word 'employment' in the act has the common law meaning and that the relationship of master and servant is requisite. * * *

"It is the appellee's contention that instead of limiting unemployment insurance to employments that have in them the relation of master and servant, the General Assembly, by the act before us, covered all who render service, unless they were expressly excluded.

"We have set out above the provisions of the act and it is clear that the legislature has defined therein the class of individuals who are entitled to receive benefits. It is also plain that the provisions of the statute differ from common law concepts of employment where the relation of master and servant exist. *Creameries of America* v. *Industrial Com. supra.*" [98 Utah, 571; 102 Pac. (2nd) 300.]

This construction has likewise been recently approved in *In re Mid-America Co.* 31 Fed. Supp. 606, wherein the Illinois Unemployment Compensation Act is construed. There the District Court, after setting forth subsections (A), (B) and (C) of section 2(f)(5) said: "The General Assembly, by providing a glossary in the Illinois Unemployment Compensation Act, adopted a statutory definition of employment more inclusive than the common law relationship of master and servant. There can be no doubt that the General Assembly had the authority to so implement the Illinois Unemployment Compensation Act even if the statutory definitions differ from those at common law." Citing *Southern Photo & Blue Print Co.* v. *Gore,* 173 Tenn. 69, and many authorities from foreign jurisdictions.

Examination of numerous decisions from courts of other jurisdictions discloses a rather hopeless conflict. So great is this difference of opinion it is hard to say where

lies the weight of authority. It must be kept in mind that the statutes are not at all the same in the different States; also that the facts in each individual case are so at variance that to hold the doctrine in one case sustains or overrules another is almost impossible. An attempt to analyze and reconcile all the holdings on this particular subject would be a hopeless task and result in much confusion. Leading cases holding *contra* to the *Miller case* are *Wisconsin Bridge & Iron Co.* v. *Ramsay,* 290 N. W. 199; *Fuller Brush Co.* v. *Industrial Com.* 81 Utah, —, 104 Pac. (2d) 201; *Meyer & Co.* v. *Unemployment Compensation Com. of Missouri,* 152 S. W. (2d) (Mo.) 184; *Moorman Mfg. Co.* v. *Iowa Unemployment Compensation Com.* 296 N. W. (Iowa) 791. Some of the authorities sustaining our decision in the *Miller case* and holding that the definition of "employment" does not depend upon the common-law concept of employer and employee or independent contractor are: *Mulhausen* v. *Bates,* 209 Wash. 304, 114 Pac. (2d) 995; *In re Foy,* 116 Pac. (2d) (Wash.) 545; *Industrial Com. of Colorado* v. *Northwestern Mutual Life Ins. Co.* 102 Colo. 550, 88 Pac. (2d) 560; *Singer Sewing Machine Co.* v. *State Unemployment Compensation Com. of Oregon,* 116 Pac. (2d) 744, 138 A. L. R. 1413; *Unemployment Compensation Com.* v. *Jefferson Standard Life Ins. Co.* 215 N. C. 479, 2 S. E. (2d) 584. In the latter case the court said: "The scope and purpose of the present Act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the Act evinces a studied effort to sweep beyond and to include, by re-definition, many individuals who would have been otherwise excluded from the benefits of the Act by the former concepts of master and servant and principal

and agent as recognized at common law." Another similar case is found in *Robert C. Buell & Co.* v. *Danaher,* 127 Conn. 606, 18 Atl. (2d) 697.

We refer specifically to section 2(f)(5) which reads: "Services performed by an individual shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the Director that—(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact." The proof showed that Kuehl was obligated to deliver the packages assigned to him by the dispatcher and to make pickups as ordered by the dispatcher. He likewise was obligated to deliver packages assigned to him at certain places within certain definite time limits. His activities were often confined to certain sections of the city by the dispatcher. He was expected to return to the employer's office as soon as possible after making the deliveries and was required to make deliveries during the same day that the packages were taken out. He collected funds for Cannonball and followed the same procedures relative to receipts and accounts as the admitted ordinary employees of Cannonball. These facts show some substantial control was exercised over Kuehl by plaintiff in error. The suggestions as to delivery were mandatory, and if not followed by Kuehl, he could be discharged at any time.

Exception (B) reads: "Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed." It must be admitted, we think, that the services performed by Kuehl were within the usual course of, and formed a part of the company's usual course of business. As to the alternative in said clause (B), the facts show that Kuehl reported to the offices each and every day, received his instructions from the dispatcher, secured the load for his truck on the premises, returned

his collections and his moneys on C. O. D. packages to the office of the company, and, therefore, it cannot be said that he performed services "outside of all the places of the business of the enterprise for which such service is performed."

Exception (C) reads: "Such individual is engaged in an independently established trade, occupation, profession or business." The very fact that Kuehl, upon being dismissed from the company, was out of employment, indicates that he was dependent upon his work for economic subsistence. Although he was allowed to serve for others, it is a fact that he never did so, nor did he have time to do so. His sole employment was in the service of the Cannonball company. His conduct was governed by the suggestion, direction and will of that company. The prices he received were those which Cannonball allowed to him, he having no part in the determination of the rates for the services rendered. The company has failed to meet the requirements of subdivisions (A), (B) and (C), of subsection (f)(5) of section 2, and therefore, Kuehl was rendering services which brought him within "employment" as the term is used in the Illinois act.

We do not think there is merit in the contention of plaintiff in error that Kuehl did not earn sufficient wages to qualify for benefits. During the period he was employed, he earned $378.78 in wages. The sum of $225 was necessary to be earned by him during the base period in order to entitle him to compensation. There was nothing in the contract for employment that considered anything but gross earnings, and a speculative amount for net earnings will not be entertained.

The decision of the circuit court of Cook county which affirmed the ruling of the Board of Review was correct, and it is affirmed.

*Judgment affirmed.*