(No. 27437.—

NEW YORK LIFE INSURANCE COMPANY, Appellant, *vs.*
FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed November 22, 1944.*

MURPHY, J., specially concurring.

SCOTT, MACLEISH & FALK, of Chicago, and FERDINAND H. PEASE, of New York, N. Y., (JOSEPH W. TOWNSEND, WENDELL J. BROWN, and JOHN A. O'NEIL, all of Chicago, of counsel,) for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This case involves determination of an assessment in the amount of $48,956.01 against the New York Life Insurance Company, appellant, made by the Director of Labor under the Unemployment Compensation Act, for contributions alleged to be due under the act on account of commissions paid by appellant to soliciting agents during the period from July 1, 1937, to December 31, 1939. The act was amended July 1, 1941, to exclude services of an insurance agent paid solely by commission, so the question to be determined is governed by the act prior to such amendment. The Director of Labor found the soliciting

agents were in "employment," as defined by the act, and that their services were not excluded under any of the provisions thereof. The circuit court of Cook county affirmed the decision of the Director of Labor and entered judgment on the assessment, and, under the provisions of the statute, appellant has appealed directly to this court.

While some point is made by the parties as to the character or manner in which insurance agents perform their services, it is quite clear that, aside from details, they worked for the purpose of procuring persons to purchase policies of insurance, and received, as compensation for their services, a commission, which might be received wholly in one payment or part of it at the time the policy is delivered and another part each year for a period of years. The details we deem unimportant. These solicitors reported to an agency and the agency, in turn, had its connection with the company itself.

Appellant takes the broad position that such insurance agents or solicitors are independent contractors, and that independent contractors are not in "employment" within the meaning of the act. Numerous authorities are cited to show that such solicitors or agents are independent contractors at common law, and hence it is claimed the decisions in *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94, and *Toplis and Harding, Inc.,* v. *Murphy,* 384 Ill. 463, are controlling, and exempt appellant from the operation of the act. They also contend that the soliciting agents were not in "employment" under the act because of the provisions of section 2(f)(5) discussed later.

We have also construed different provisions of the act in relation to other types of employment in *Miller, Inc.* v. *Murphy,* 379 Ill. 524, *Rozran* v. *Durkin,* 381 Ill. 97; *Peasley* v. *Murphy,* 381 Ill. 187, and *Smith* v. *Murphy,* 384 Ill. 34, which have quite comprehensively touched upon the leading features of the Unemployment Compensation Act. In the declaration of public policy, the evil

sought to be eliminated by this statute is "involuntary unemployment." It is not limited to unemployment of the servant of a master in the customary sense of the word, but involuntary unemployment generally. The scope of this statutory purpose is so broad that it necessarily includes all types of the unemployed, and all the relations through which compensation for services is made, without regard to the legal designation of the relations under which, previously, pay had been made for such services, the consequence of which is that the act is not designed as applying to any particular occupation, business, profession or relation, but is an original piece of legislation which creates a framework that makes parties subject to its provisions, measured by the definitions and specifications set forth in the statute. The fact that these specifications and definitions may properly embrace an employment as it is customarily understood does not prevent its including within the statutory terms those who, before its enactment, might not have been regarded as being in "employment," or as being employers, or those bearing the relation of independent contractors, or other relations different from that strictly of employee at common law.

To effect the purpose of the statute, section 2 (Ill. Rev. Stat. 1937, chap. 48, par. 218,) is given up entirely to definitions, and these definitions govern the application of the act. Thus, among other things, section 2 defines (d) employing unit; (e) employer; (f) employment; (g) wages; and others not necessary for the decision of the question here involved. After section 2, defining every relationship which brings about employment or unemployment and naming the specific relations not constituting employment, section 3, (par. 219) provides: "Any employing unit which is or becomes an employer subject to this Act within any calendar year shall be subject to this Act during the whole of such calendar year." And then follow various provisions of the operative sections of the

statute. It is noticeable that the term "independent contractor" is not mentioned in the statute and is not defined, although words were used exempting certain persons from the operation of the act who could probably otherwise be described as independent contractors.

Looking, then, at the definitions, we find that two elements are essential to the operation of the statute: (1) there must be an employing unit; and (2) services must be performed by an individual for an employing unit. Having created new relationships for the purpose of the statute, it became necessary to define precisely what constituted an employing unit, and what constituted services under the statute, and by so defining, it necessarily follows that those who are not "employing units" and those who are not regarded as "rendering service" may be readily ascertained by applying the statutory definitions. The act does not apply to one who is not an employing unit, and, likewise the act does not apply to one not rendering service or who, being within the exceptions of the act, is not regarded as rendering service.

We have distinctly held that the concept of employment set out in the act, rather than the common-law conception of such applying to master and servant, is controlling. (*Miller, Inc.* v. *Murphy,* 379 Ill. 524; *Rozran* v. *Durkin,* 381 Ill. 97.) However, it is apparent that certain situations may exist which take the parties from under the operation of the act. Those situations are described specifically in the statute and apply in particular (1) to the employing unit; and (2) as to what services by an individual shall be deemed employment. Both are specifically described, one in section 2(d) and the other in section 2(f)(1 to 5). The definitions contained in section 2 of the statute are the measure to be applied in deciding whether any particular facts bring the parties under the statute, and the common law, or application of the common law to such situations, is not controlling.

Generally speaking, there must be an employing unit before there can be an application of the act. "Employing unit" is defined in the first sentence of section 2(d), and includes any "type of organization, * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State." The balance of this long paragraph has nothing whatever to do with the definition of employing unit. It pertains to situations deemed within or without the definition specifically set out for the purpose of clarity. Thus, the contractor-subcontractor sentence in section 2(d), referred to in *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94, is for the purpose of ascertaining the employing unit where there are contractors or subcontractors performing the work of the employing unit, and to make such person employing them liable unless two events concur, *viz.,* (1) the subcontractor, at the time of his doing the work, is doing like work for others, or is available to do like work for others; and (2) is independently established in trade, business or profession. In this event the contractor or subcontractor becomes the employing unit of those rendering service, and liable to make the payments provided by the act. It was a situation coming under this provision of the act which we discussed in the *Ozark Minerals Co. case.* It would seem apparent that, under section 2(d), if there is a contractor or subcontractor who becomes the employing unit, necessarily, the person engaging the contractor or subcontractor cannot be the employing unit. The language contained in section 2(d) furnishes the test as to who is the "employing unit" where the work is done by contractor or subcontractor. To make the contractor or subcontractor the employing unit, the two conditions above must be present, otherwise the person receiving the benefit of such contract is the employing unit. This section is not for the purpose of determining whether individuals are rendering service, as defined in section 2(f).

The definition of employment during the period involved in this case was "* * * 'employment' means services * * * performed for wages or under any contract of hire, written or oral, express or implied." (Ill. Rev. Stat. 1937, chap. 48, par. 218, section 2(f)(1).) However, not all persons performing services come within the operation of the statute, because section 2(f)(5) provides, substantially, that persons rendering services are not under the act if the individual is (A) free from control; (B) the service is outside the usual course of the business for which said service is performed; and (C) the individual is engaged in an independently established trade, occupation, profession or business. Such a person would undoubtedly be an independent contractor, but the type of contractor described by the statute requires more than what would constitute an independent contractor at common law, and, therefore, any person rendering service to an employing unit comes within the act, even though he may have heretofore been considered an independent contractor, unless he be an independent contractor combining all the elements of section 2(f)(5), in which event he is not rendering services under the Unemployment Compensation Act, and within the same class as those excepted by section 2(f)(6). With this general view of the structure of the Unemployment Compensation Act, it is apparent the cases of *Ozark Minerals Co.* and *Toplis and Harding* have reference to a contract situation where it is necessary to determine whether there is an *employing unit* as defined in section 2(d), while most of the other cases involved decide whether the services under consideration constituted "employment" as defined by section 2(f) of the statute, and its exceptions.

The effect is that the person rendering service is never without an employing unit. The result is that the contractor-subcontractor provision of section 2(d) can be applied only as between employing units, and not as between

employees. The *Ozark Minerals Co. case* recognizes this construction as to section 2(d) when we said: "This section [2(d)] brings the employees of an independent contractor or subcontractor dealing with an 'employing unit' within the act as employees of the 'employing unit,' with the exceptions therein specified. Nowhere does the act declare that an independent contractor or subcontractor may be considered an employee of the employing unit." That situation is not present here, as there is no pretense that there is any intervening contractor or subcontractor between appellant, New York Life Insurance Company, and its solicitors or agents.

The situation here presented brings up for consideration whether appellant was exempt from the provisions of the act by reason of anything in section 2(f) (1 to 5, incl.) The agents came within section 2(f)(1)—"subject to the other provisions of this subsection, 'employment' means services, * * * performed for wages or under any contract of hire, written or oral, express or implied," and received wages, as then defined in section 2(g), which provided: " 'Wages' means every form of remuneration payable for personal services whether payable directly or indirectly, including salaries, commissions, bonuses, and the reasonable money value of all remuneration payable in any medium other than cash."

If appellant is exempt, it must be by reason of the provisions of section 2(f)(5), because the relationship between appellant and its agents is direct. It is not through a contractor or subcontractor, so section 2(d) can have no application. This section 2(f)(5) reads: "Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown * * * (A) Such individual has been and will continue to be free from control or direction * * *; (B) Such service is either outside the usual course of the business for which such service is performed or that such

service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is engaged in an independently established trade, occupation, profession or business." The statute requires all three of these elements to concur. While, it is argued, the provisions of the agents' contracts indicate appellant only has a certain amount of control over the activities of its agents or solicitors, still, it exercised some control because it reserved the right to discharge for violation of rules and instructions, and it certainly expects them to engage in such occupation as their principal business. The solicitors do not have an independant trade, occupation or profession. Their trade, occupation or profession is that of soliciting insurance for appellant upon commission. Under the law as it existed at the time of the assessment, appellant was subject to the provisions of the Unemployment Compensation Act, and the judgment of the circuit court in confirming the assessment of the Director of Labor was correct.

The appellant also contends that the amendment of the statute in 1941, eliminating insurance agents working on a commission from the term "employment" in section 2(f)(6) of the act, is merely clarifying as to what the legislature intended the act to be as it existed in 1937 and 1939. It has long been a canon of statutory construction that a legislative amendment is construed as prospective and not retrospective, in the absence of express language declaring it to be retrospective. (*Friedman* v. *City of Chicago,* 374 Ill. 545; *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330; *O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244.) This principle was applied in *Oak Woods Cemetery Ass'n* v. *Murphy,* 383 Ill. 301, where a change in the statute was made, applying to agricultural labor under the Unemployment Compensation Act.

We are convinced that insurance agents working on a commission were, during the period in question, within

the provisions of the act, and find nothing in the amendment to indicate anything other than that the legislature, in its wisdom, has decided, from the date of its enactment, such persons shall not be within the provisions of the act, and it is simply a change in the law, and not an interpretation of a prior law.

The judgment of the circuit court of Cook county was correct, and is, accordingly, affirmed.

*Judgment affirmed.*

Mr. JUSTICE MURPHY, specially concurring.