(No. 28014.—

ARROW PETROLEUM COMPANY, Appellant, *vs*. FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 15, 1945.*

BISHOP & BURDETT, (JOHN M. FALASZ, of counsel,) both of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Director of the Department of Labor made an assessment against Arrow Petroleum Company, appellant, for contributions claimed to be due under the provisions of the Unemployment Compensation Act. (Ill. Rev. Stat. 1939, chap. 48, pars. 217-250.) These assessments were based upon payments made to haulers, peddlers and solic-

itors during the years 1937, 1938 and 1939. After a hearing, the Director's representative recommended that the haulers, peddlers and solicitors had performed services and were in "employment" within the meaning of the act. Objections were filed by appellant and overruled, and the report of the Director's representative confirmed. A writ of *certiorari* was sued out of the circuit court of Cook county, and, upon presentation of the record, that court entered its order quashing the writ and confirming the Director's decision, and entering a judgment against appellant. It appeals directly to this court in accordance with the provisions of the statute. The case involves three classes of persons claimed to be in "employment" within the meaning of the act as in force at that time, and who are, respectively, designated as haulers, peddlers and solicitors.

Appellant is engaged in the business of distributing fuel oil at wholesale and retail. Its main office and storage plant is located on Franklin avenue in Forest Park. It had a bulk plant in Glen Ellyn, and also one on the north side and one on the south side of Chicago. Appellant sold its products through a sales force employed by it, and also through solicitors. Many of these solicitors, it is claimed, sold oil as a side line to their other business. The products sold were delivered by trucks owned and operated by appellant, or through haulers or peddlers. No question is raised upon this appeal as to salesmen employed by the company, or employees who operated company-owned trucks. The question is raised with respect to those persons designated as haulers, peddlers and solicitors, and, since there is considerable variance in the facts pertaining to each class, they will be described separately.

### HAULERS.

This group managed and controlled corporations which owned trucks on which they paid license fees, insurance

and maintenance costs. They hired their own help and paid them wages and deducted workmen's compensation insurance, and paid social security taxes. They had from one to five employees and from one to three trucks. Haulers made deliveries of oil to appellant's customers and were paid commissions of from one half to three quarters of a cent per gallon twice a month on statements submitted to appellant, showing the number of gallons hauled. They were required to make C.O.D. collections. They each carried public liability insurance on their trucks, and each hired or discharged his own help. They sometimes did hauling for other companies, but mainly for appellant. These haulers were former drivers of appellant, and used appellant's garage without cost. They had no business address other than appellant's place of business. In performing their services, they were held by appellant to the same standard of conduct as truck drivers in the employ of appellant. They were sometimes called in to attend meetings in which instructions were given as to how to approach customers. They had on their trucks the "Arrow" sign, and were forbidden to haul for anybody else with this sign upon the trucks, and relations would be severed for disobedience of this regulation. The reason was that Arrow did not want its standard of quality affected by inferior oil delivered under its trade name. Haulers operated within a fixed territory, except upon a special order of appellant to go elsewhere. Drivers hired by the haulers were instructed to follow appellant's orders. In spare time, they occasionally hauled for others, but, usually, when business of appellant fell off due to seasonal change, they reduced their staff of drivers.

### PEDDLERS.

None of this group had any written agreement with appellant. Each owned his own truck upon which he paid license fees, upkeep expenses and insurance. Each truck

had a tank on it with a capacity of from 800 to 1000 gallons. Each peddler had his own customers that he procured or solicited. They loaded their tanks but paid nothing for the oil thus received. The oil delivered to customers solicited by the peddlers was accompanied by a bill upon appellant's forms, one copy being delivered to the customer and one returned to appellant. With the copy returned, each peddler was required to turn in the full retail price of the oil delivered, and to list the name and address of the purchaser. The peddler received payment twice each month by check in the amount computed at a fixed rate per gallon delivered. This rate was generally the difference between the retail and the wholesale price, but sometimes, while the retail price of oil fluctuated, a fixed amount of difference was paid such peddler. Occasionally they were asked to make delivery to one of appellant's customers. During the warm months, the peddlers sold other products or engaged in other business. The delivery of oil to appellant's customers was a substantial part of the business of each peddler.

## SOLICITORS.

These men were either in business for themselves or employed by other companies. One was in the office of a lumber and coal firm; others sold stokers, serviced stokers or oil burners. If, in the course of their regular work, they met users of fuel or heating oil and were able to sell such fuel to customers they obtained a contract, and turned the same over to appellant, and were paid from one eighth to one quarter of a cent per gallon commission. The contract forms were supplied by appellant. These persons devoted whatever amount of time they saw fit to the work. None of them was engaged in the business of selling oil as his main business. Orders secured by them were subject to acceptance or rejection by appellant, and, if requested by the customer to do so, they collected the price

of the oil. These solicitors were paid the same rate of commission as regular salesmen. Their selling activities were required to be up to standards fixed from time to time by appellant, and they were supposed to put in a satisfactory amount of effort during the year, and were subject to dismissal if they were not making an adequate effort.

Appellant contends all of these different types of service made those rendering them independent contractors within section 2(d) of the act. It is also contended, in the alternative, that peddlers and solicitors were excluded under the provisions of section 2(f)(5). It is conceded that haulers could not come under this latter designation.

We have recently construed the provision of the Unemployment Compensation Act designated as section 2(d), (Ill. Rev. Stat. 1939, chap. 48, par. 218,) prior to its amendment in 1940, in *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94; and *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316. Section 2(f)(5) has been construed many times. *Miller, Inc.* v. *Murphy,* 379 Ill. 524; *Rozran* v. *Durkin,* 381 Ill. 97; *Peasley* v. *Murphy,* 381 Ill. 187; *Smith* v. *Murphy,* 384 Ill. 34; *Toplis and Harding, Inc.* v. *Murphy,* 384 Ill. 463; *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316.

Both under section 2(d) and section 2(f)(5) we have held that the type of independent contractor that is not included within the act, and which excludes the employer from making contributions on account of their services, is the type and kind of an independent contractor described in the act, and not necessarily one who would constitute an independent contractor at common law. Thus, we have held under section 2(d), which defines an employing unit and excludes an employing unit from the operation of the act when it contracts with, or has under it, a contractor or subcontractor, it is necessary that such contractor or subcontractor, at the time of his performing

the work for an employing unit, must meet the following requirements: (1) he must perform work, or in fact be actually available to perform work for anyone who may wish to contract with him; and (2) be found to be engaged in an independent trade, business, profession or enterprise. These are concurrent requirements, and he is not regarded as an independent contractor unless both of them exist at the same time. *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94; *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316.

We will now examine the different types of service involved, and apply the statute as it has been construed.

## HAULERS.

The individuals classified as haulers were both managers of a small corporation or association, and had several employees, and operated from two to five trucks hauling oil of appellant to either retail or wholesale customers. They were engaged in the same business as the employing unit, as the evidence shows that it also delivered oil in trucks by regular employees. While these haulers were engaged principally in hauling for appellant, the evidence discloses, without contradiction, they were in the general hauling business, and had hauled for other concerns, and were available at least a part of the time to haul for other concerns. It is also disclosed they received as compensation a certain price per gallon at stated intervals, and that this basis of pay was to continue for a period of one year, and that either party had a right upon thirty days' notice to cancel the contract. From this compensation, his own salary and the wages of his employees and all other expenses were paid.

As we pointed out above, section 2(d) defines an employing unit, and this section provides: " 'Employing unit' means any individual or type of organization * * * which has * * * in its employ one or more individuals

performing services for it within this State. * * * Whenever any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless such contractor or subcontractor at the same time that he is performing work for such employing unit performs work or is in fact actually available to perform work for anyone who may wish to contract with him and is also found to be engaged in an independently established trade, business, profession, or enterprise * * * the employing unit shall for all the purposes of this Act, be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such work; * * *."

In *Ozark Minerals Co.* v. *Murphy*, 384 Ill. 94, we said: "This section brings the employees of an independent contractor or subcontractor dealing with 'an employing unit' within the act as employees of the employing unit, with the exceptions therein specified. Nowhere does the act declare that an independent contractor or a subcontractor may be considered an employee of the employing unit." In *New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316, we pointed out that section 2(d) was for the purpose of ascertaining the employing unit where contractors or subcontractors were engaged, and, to make such contractor or subcontractor liable as an employing unit, two circumstances must concur: (1) that the contractor or subcontractor, at the time of his performing his work for the employing unit, performs work or is, in fact, actually available to perform work for anyone who may wish to contract with him; and (2) is found to be engaged in an independently established trade, occupation, business or profession.

Measured by the test laid down in the two cases just referred to, these haulers would be contractors or subcontractors of the employing unit, if the proof of availability

to render services to other employing units is sufficient. One of these haulers testified he had hauled for five different concerns, for some of which he hauled oil, and that he would be glad to haul anything that he could make a dollar out of. On cross-examination he said that over ninety per cent of his business was for appellant; that his agreement did not require him to give it first claim on his time and the use of his trucks, and if the occasion arose where he had a request of appellant and others he would endeavor to please both parties. The testimony of the other so-called hauler was along the same line, only a little more convincing as to availability and performing work for others.

It seems to us that, in the absence of evidence to the contrary, this makes the haulers contractors or subcontractors under section 2(d), and therefore employing units. The fact the principal part of the work performed is for appellant is not controlling, however, as he meets the requirement of the statute that he be in an independent business, *viz.*, transport business; and that he is doing a part of the work of the employing unit.

In applying the statute, there must be a reasonable construction of the facts, and since it appears appellant has regular employees who haul and deliver oil, there must be some distinction in the minds of the parties between haulers of the type here described and such regular employees, and it seems to us that they come squarely within section 2(d), and are employing units, and, hence, this relieves appellant from making the contributions.

### PEDDLERS.

A typical witness as to the facts pertaining to peddlers shows substantially the following arrangements: The witness was engaged in the coal, ice and fuel business; he owned two trucks, one an express truck and the other a tank truck. The tank truck was to haul oil, which oil was

.purchased from appellant. He found his own customers, and delivered the oil and turned the money collected from the delivery of the oil over to appellant. The oil was charged to him, and not to the customers, and it was billed to him at the retail price, and every two weeks he would receive from appellant the agreed difference designated as a commission. Simply stated, the transaction is,—the witness purchased the oil, turned it over to the customer, collected the money from the customer, paid the money to appellant, and bimonthly received the difference between the wholesale and retail price. The evidence also shows that the so-called peddler does not confine himself to appellant's retail price in selling to his own customers. The other persons coming within the classification of peddlers work under a comparable state of facts.

It is contended by appellant that peddlers come either within the provision of section 2(d) or of 2(f)(5). We think it is clear they do not come within the provision of section 2(d), as they are, obviously, not contractors or subcontractors engaged in doing the work of the employing unit. They purport to be independent dealers. If they are independent dealers, to exempt appellant from the provisions of the act such peddlers must comply with the concurrent requirements of section 2(f)(5), and (A) be free from the control and direction of appellant over the performance of such services; (B) such services be outside the usual course of business for which such service is performed, or that such service is performed outside of all of the places of business of the enterprise for which such service is performed; and (C) such individual is engaged in an independently established trade, occupation, profession or business.

It is apparent the so-called peddlers comply with requirements A and C because, in the first place they have their own customers, and fix their own price, and certainly peddle or sell the oil as an adjunct to their own separate

business. The remaining question is whether they comply with provision B, *viz.*,—that "such service is either outside the usual course of the business" of appellant, or "is performed outside of all of the places of business of the enterprise for which such service is performed." We think they are within the condition covered by the second half of the sentence, that is, that such service is performed outside of the place of business of appellant. This appears from the fact the oil is merely procured at appellant's place and delivered to addresses, in many instances, unknown to it and, in many instances, concealed. We are of the opinion the so-called peddlers are acting independently in accordance with the statutory provisions of section 2(f)(5), and, consequently, appellant is relieved of making contributions as to such class.

## SOLICITORS.

The remaining persons whom the Director of Labor classifies as being in employment are those designated as solicitors. It is contended by appellant these solicitors come within section 2(d) of the act, or, in the alternative, within section 2(f)(5). It is difficult to follow appellant in claiming they were an employing unit under section 2(d), as that requires them to perform the same work as appellant, and, at the same time, be doing, or available to do, work of a like kind for others, and have an independently established business, trade or profession. The proof falls far short of this. Most of these persons were employed by other companies which had some relation to the selling of fuel, and this gave them an opportunity to sell fuel oil. They made the arrangements with appellant to sell such fuel oil to customers they might obtain, and were paid a commission for selling it. They were required to use order forms furnished by appellant, and such orders were subject to acceptance or rejection by appellant, and if their efforts were not satisfactory they could be discharged

by appellant. Most of the witnesses testified they so acted, with the consent of their own employer, who was engaged in another business.

The facts just pointed out, as well as the more complete statement of their activities above, disclose that such individuals are not free from the control or direction of appellant in the performance of their duties, and, hence, are not within the provisions of section 2(f)(5). Also, the compensation they receive comes within the classification of wages under section 2(g), which provides: " 'wages' means every form of remuneration payable for personal services, whether payable directly or indirectly, including salaries, commissions, bonuses," etc. Ill. Rev. Stat. 1939, chap. 48, par. 218, sec. 2(g).

We are, therefore, of the opinion the Director of Labor improperly classified individuals designated as haulers and peddlers as being in employment; but that his action with respect to those persons called solicitors was proper and lawful.

The judgment of the circuit court of Cook county is, accordingly, reversed, and the cause remanded for proceedings not inconsistent with the views expressed herein.

*Reversed and remanded.*