(No. 28151.—

PHOTOGRAPHIC ILLUSTRATIONS, INC., *et al.*, Appellants, *vs.*
FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed January 17, 1945—Rehearing denied March 15, 1945.*

BENJAMIN F. J. ODELL, of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C.
WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is an appeal from the circuit court of Cook county,
confirming a decision of the Director of Labor holding

appellants liable for contributions on fees or compensation paid to models. It is claimed this case raises new and different issues from those in *Miller, Inc.*, v. *Murphy*, 379 Ill. 524, where we held, under similar facts, that models were in employment as defined by the statute, rendering the photographers liable to make contributions under the Unemployment Compensation Act.

The claim is now made by appellants that the employees are contractors under section 2(d) of the act, (Ill. Rev. Stat. 1943, chap. 48, par. 218,) and are also not in employment under the provisions of section 2(f)(5); and further, that the models, if employees, are those of the clients of appellants. This last contention does not require consideration, as the Director did not assess any contributions where the evidence shows the models were paid by the clients.

Unless there is something in the decisions of this court construing section 2(d), rendered after the decision in *Miller, Inc.*, v. *Murphy*, the facts in the present case can not be differentiated from those in that case. Here appellants operate a photographic studio and make pictures for advertising purposes. Models pose before the camera, in accord with a certain sketch or design prepared in advance, and their pictures are used in display advertisements of customers of appellants. These are substantially the facts in the *Miller case*. It is claimed, however, that in the present case it appears the photographer merely renders a service and does not sell anything; that the picture has no value to him, when taken, except the fee he derives from taking it; that the models are registered at agencies, and the advertiser or photographer communicates with this agency to contact a model; that the time fixed is that convenient for the model; that the photographer and model together read and study the layout of the sketch given by the advertiser, and co-operate to fulfill the wishes of the advertiser to create the artistic gem intended to inspire

purchases. After this the camera is prepared, and, when the signal is given, the model registers the feeling or adopts the pose, and the picture is taken.

It also appears the photographer indicates to the model the manner of posing to accomplish the most effective result, and if they are told to smile or frown, or show fear or other emotion, and the photographer is dissatisfied, it is done over again. Generally, models are required to cooperate with the photographer, who determines how the completed photograph will appear, as a model is unable to get that perspective herself. The model is paid by the hour, and may leave one photographer and go to another, if the setting consumes too much time. Sometimes the model type is selected by the advertiser, and sometimes by the photographer. When the models are paid by the photographer the amount, including ancillary expenses, is billed to the customer. The clothing, adornment, hairdress and other apparel is furnished by the employee. When the photographs are completed, the model signs a release, permitting the pictures to be used, and sometimes agrees to refrain from posing as a model for a similar product for a given time. Details among the various commercial photographers differ to some extent, but the one essential is true of all cases, that the employee attempts to register a feeling or display some pose or attitude which is transferred to a picture by the photographer, and the result used by third persons for advertising purposes.

We have gone into the facts with more detail than appeared in the *Miller case* because the contention is made that the additional facts will disclose the case comes within our holdings in *Ozark Minerals Co. v. Murphy,* 384 Ill. 94, and *Toplis and Harding, Inc. v. Murphy,* 384 Ill. 463. In the *Ozark case* the defendant operated a silica processing mill. For the purpose it was necessary to get crude silica, and this was obtained from a mine. The company made contracts with persons called prospectors or miners, who

separated the crude silica from the ground. They produced this product by their own labor, without supervision, for a fixed price, based on quantity, and were required to maintain a specified quality, and were paid according to the results produced. The product of their industry was left for the company to put up and use. They could work for others if they desired, or do their own work, and the only control over them was based upon the right to reject the product produced, or to have it produced by others at their own expense. A result only was produced by the contractor without supervision or control of the employing unit, but the separation of the silica from the ground was wholly the work of those who were held to be contractors, and not employees of the silica company.

It can readily be seen how such a result is far different from that in the present case. The models produce no result by their unaided effort or that is useful without the combined act, at the same time, of the photographer. The gesture or pose in the studio is useless for advertising or picture purposes unless it is transferred by means of the camera to the photographic print for commercial use. This is not a result, but merely one step in the result produced jointly by the model and the cameraman. Since the photographer is in the business of producing suitable prints or photographs it is necessary that he have someone pose for the purpose, and it is the first contention of appellant that the services rendered by the models is similar in principle and result to those of the miners or farmers in the *Ozark Minerals case* under section 2(d). It is obvious that this cannot be true, because the contractors in the *Ozark Minerals case,* when they had finished their work, left their result in such shape the other party to the contract could usefully employ it from there on, without having had any more connection with the product produced than to pay the contractors for a result which became useful, without further participation of the contracting party. Such a

result does not obtain here, for in order to capture the artistic appearance of the model it requires at the same moment the act of the photographer to permanently portray the art of the model upon the photographic film.

In *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316, we held that the purpose of section 2(d) was to define and ascertain the employing unit, and also that to make the unemployment statute operative there must be (a) an employing unit, and (b) one rendering service; and then when the contractor or subcontractor is the employing unit the original party contracting with them is exempt. To make the subcontractor an employing unit, two things must concur while it is performing any work which is a part of the original contractor's usual trade, occupation, or business: (1) the contractor or subcontractor must at the *same* time he is performing work for such employing unit, perform work or in fact be actually available to perform work for anyone who may wish to contract with him; *and* (2) must also be found to be engaged in an independently established trade, business, profession, or enterprise.

It is shown the work of a model is of such a personal character that he or she cannot pose for one photographer and at the same time be available to pose for another, so we find there is nothing in that holding of the court to bring models under the designation of contractors or subcontractors as defined by section 2(d). The *Toplis and Harding case* did not involve construction of section 2(d) but of section 2(f)(1), now considered.

Section 2(f)(1), in substance, provides that employment means any service performed by any individual for an employing unit. Since, under section 2(d), these models are not employing units as contractors it cannot, under any reasonable construction, be said they are rendering service to themselves. Section 2(f)(5) provides that "services performed by an individual shall be deemed to be employment subject to this act unless and until it is shown to

the satisfaction of the Director that—(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is engaged in an independently established trade, occupation, profession or business." (Ill. Rev. Stat. 1939, chap. 48, par. 218.) And we have many times held these three elements must all be present.

From the facts indicated, it is shown the models are not free from control or direction over the performance of their services, but are required to co-operate with the photographer in facial expression, pose, posture and other refinements of the art, and while the term "co-operation" is used, it is apparent from the proof that if the models do not co-operate they cease to be employed. It is further agreed that the photographer's idea of the correctness or artistic value of the pose, rather than that of the model, prevails. Nor do we believe the evidence shows the service is outside the usual course of the business for which the service is performed, as it is undoubtedly in aid of, and a part of, the work by which appellants render their calling useful to those using commercial artists.

While appellants have pointed out many details and refinements of the nature of the work performed by models, as distinguished from the general facts shown in *Miller, Inc.* v. *Murphy,* we are convinced there is no essential difference; and *Toplis and Harding, Inc.* v. *Murphy,* 384 Ill. 463, rather than aiding appellants, brings these models within section 2(f)(5). We find these models were not contractors or subcontractors under section 2(d), as defined by the statute, or as explained by any of our recent decisions, and it is apparent the models do not concur-

rently comply with the three conditions specified in section 2(f)(5), so as to take them out of the designation "employees" and to exclude appellants from the provisions of the act, or to require us to recede from, or to modify, the *Miller case*.

It is our conclusion that the judgment of the circuit court of Cook county was correct, and it is, accordingly, affirmed.

*Judgment affirmed.*

Mr. Justice Wilson, dissenting.