(No. 29578.—

CONCRETE MATERIALS CORPORATION, Appellant, *vs.* ROBERT L. GORDON, Director of Labor, Appellee.

*Opinion filed November 20, 1946.*

John P. McGoorty, Jr., of Chicago, for appellant.

George F. Barrett, Attorney General, (Albert E. Hallett, of Chicago, of counsel,) for appellee.

Mr. Justice Smith delivered the opinion of the court:

This cause originated in a proceeding before the Department of Labor. The Director made an assessment. The decision of the Director was reviewed by the circuit court of Cook county, on *certiorari*. That court quashed the writ and confirmed the decision of the Director. The case is here on appeal under the statute.

Appellant was engaged in the manufacture of certain types of cement products. The evidence justifies the inference that its products were sold through advertisements circulated through the United States mail. The time involved is the years 1943 and 1944. During that time appellant employed at least three regular full time employees, who were employees within the provisions of the Unemployment Compensation Act. (Ill. Rev. Stat. 1943, chap. 48, pars. 217 *et seq.*) Its regular employees did not at any time equal the number required to make an employing unit an employer liable to pay contributions to the Unemployment Compensation fund. In addition to its regular employees, however, appellant in the years 1943 and 1944,

employed certain women to address envelopes in their homes and place therein certain advertising material. If three or more of such workers were, under the act, in the employment of appellant in the years involved, then it was an employing unit within the meaning of the act, and liable to pay such contributions.

Some of the women employed were married; some of them were housewives, engaged in household duties, and some had small children. One of the women who was unmarried was also engaged in household activities. At the time these women commenced working for appellant, with one exception, none of them were engaged in any business activity. Some of them applied to appellant for work because they had read appellant's advertisements for help in newspapers. Others on the suggestion of friends and acquaintances. The applicants were tested as to their ability to perform the work and were given detailed instructions as to the manner of addressing the envelopes, the use of capitals and punctuation, the manner in which the envelopes, after they were addressed, should be sorted and classified according to the postoffices to which they were addressed. They were tied in bundles in that order. A card was placed on the outside of each bundle indicating the postoffices to which the envelopes contained in the bundle were addressed. Appellant furnished the envelopes and other materials used. The workers furnished the equipment used by them. Some of the workers were also required to stamp, count and sort the envelopes addressed by them and tie them in bundles, classified according to the cities to which they were addressed. Some of the workers were also required to prepare separate lists showing the addresses to which the envelopes were addressed. The lists of names and addresses to which the envelopes were to be addressed and the advertising matter to be enclosed in the envelopes were furnished by appellant. After the envelopes were addressed and returned to appellant they were evi-

dently inspected as to the neatness and accuracy of the work. In some instances the workers were called by telephone and their failure to comply with the instructions given called to their attention. Such failure was called to the attention of others personally. The arrangement was such that appellant had the right to terminate the relation at any time by discontinuing the delivery of materials to the worker or assigning to her further work. Likewise each of the women engaged could discontinue the work at any time. Each worker was permitted to accept such volume of work as she desired. No time was specified for the completion of the work, but a worker was supposed to take only such volume as she could complete within a reasonable time. If they did not complete the work within such reasonable time, appellant was at liberty to take up the work and assign it to someone else.

At the time these workers applied to appellant for work, none of them had or used a trade name. When they were employed appellant required each to adopt a trade name composed of her last name followed by the words "Letter Service." They were paid for their work at an agreed rate based upon the number of envelopes addressed. During the time these workers were doing work for appellant, none of them performed any similar work for anyone else. With one exception, none of the workers did any other work, except housework in their own homes, during the period of time they were employed by appellant. One was a full time employee of another employer and only worked for appellant during her spare time. There were no restrictions imposed by appellant on the workers performing services for others. Their inability to work for others was due to their limited spare time and to the volume of work performed by them for appellant. Two of the workers at times employed others to assist them in performing their work for appellant. One of them was a member of a partnership which was formed in March or April, 1944.

The partnership consisted of this worker and her husband. Her husband did not, however, assist her in obtaining or doing the work. Of the two workers who employed others to assist them, one frequently employed one assistant, and never more than three. Whether they employed assistance was entirely in their discretion. If such assistance was employed, it was paid for by the workers and not by appellant. Two of them listed the trade names adopted by them in the telephone directory—one early in 1944, which was discontinued in June of that year. The other did not list her trade name in the telephone directory until September, 1944, which was nearly the end of the second year of her services for appellant and the last year here involved. Sometimes they called at appellant's place of business to obtain an assignment of work. Sometimes they would telephone appellant and the work would be delivered to their homes by appellant. When the work was completed, sometimes it would be delivered by the worker to appellant, but generally they would telephone appellant and the finished work would be picked up by appellant's truck. By direction of appellant invoices for the services performed were rendered to appellant under the respective trade names adopted at the suggestion of appellant. They were paid at irregular intervals as the volume of work assigned to them at various times was completed.

Upon the facts in the record, the Director found that these workers were employees of appellant, as an employing unit under the Unemployment Compensation Act. Appellant claims they were independent contractors and not employees within the act. Upon this ground the assessment made by the Director is challenged. The contentions made require an analysis of the applicable provisions of the act.

In construing the Unemployment Compensation Act, we have repeatedly said that the relation of the parties must be determined by the definitions contained in the act

and that common-law definitions must yield to those definitions. (*Peasley* v. *Murphy*, 381 Ill. 187; *Rozran* v. *Durkin*, 381 Ill. 97; *Miller, Inc.* v. *Murphy*, 379 Ill. 524.) To bring an employer within the purview of the act there must be an employing unit subject to the act and services performed by an individual or individuals, for such unit, which constitute employment, as defined in the act. In order to determine the existence of these factors, various provisions of the act must be considered.

The record shows that appellant employed at least three regular full-time employees at all times. It was, therefore, an employing unit, as defined in section 2(d) of the act. But the fact that it was an employing unit, as there defined, is not enough to make it subject to the provisions of the act. In order to make it an employing unit subject to the act, it must belong to that class of employing units designated in section 2(e). The issue here is whether it was an employing unit which was required to make contributions to the unemployment compensation fund under the act. The controversy is whether it was, within the act, the employing unit of the women engaged by it to address envelopes and prepare the same for mailing. The controlling question is whether those services constituted employment within the definition of that term contained in the act.

Section 2(d) defines an employing unit as an individual or any type of organization which had in its employ one or more individuals performing services for it. But this definition is not complete in that the word "employ" and the word "services" are not there defined. What is meant by those words, as there used, must be determined from other provisions of the act. Section 2(f)(5) defines "services" which shall constitute "employment" under the act. In order that an employer may be an employing unit subject to the provisions of the act, under section 2(e) it must have had in its employment six or more individuals who were performing services which constitute "employ-

ment" within the definition of that term contained in section 2(f)(5). That definition is as follows:

"Services performed by an individual shall be deemed to be employment subject to this Act unless and until it is proven in any proceeding where such issue is involved that—

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is engaged in an independently established trade, occupation, profession or business."

The character of the services rendered, measured by section 2(f)(5), determines whether there is "employment" within that term as used in section 2(d). The exception contained in section 2(f)(5) takes out of the term "employment" those services rendered under the concurrent conditions specified in subparagraphs (A), (B), and (C). Under this exception, in order to bring services performed within the exception, the conditions specified in subparagraphs (A), (B), and (C), must all concur. *Murphy* v. *Daumit,* 387 Ill. 406; *Toplis and Harding, Inc.,* v. *Murphy,* 384 Ill. 463; *Smith* v. *Murphy,* 384 Ill. 34; *Peasley* v. *Murphy,* 381 Ill. 187; *Rozran* v. *Durkin,* 381 Ill. 97; *Miller, Inc.,* v. *Murphy,* 379 Ill. 524.

A great deal of the argument on both sides has been devoted to the so-called contractor or subcontractor clause contained in section 2(d). That provision is as follows:

"Whenever any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless such contractor or subcontractor at the

same time that he is performing work for such employing unit performs work or is in fact actually available to perform work for anyone who may wish to contract with him, and is also found to be engaged in an independently established trade, business, profession, or enterprise, or unless the employing unit as well as each such contractor or subcontractor is an employer by reason of Section 2, subsection (e), or Section 3, subsection (c) of this Act, the employing unit shall for all purposes of this Act, be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such work."

This language in section 2(d) defines a contractor or subcontractor whose employees are to be regarded as employees of the employing unit, and conversely, those whose employees are not to be so regarded. While, under the conditions specified in the contractor clause of section 2(d), the employees of an independent contractor or subcontractor may be regarded, for the purposes of the act, as employees of the employing unit, as we said in *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94, nowhere does the act declare that an independent contractor or subcontractor may be considered an employee of the employing unit. No provision in the act defining individuals who are included as employees of the employing unit, or defining those who are excluded from that relationship, evidences an intention to include independent contractors or subcontractors as such employees within the act. The legislative history of the act leads to the same conclusion. As pointed out by appellee the Unemployment Compensation Act was modeled after the draft of a proposed act furnished to the legislatures of the several States by the Social Security Board in 1937. The contractor or subcontractor provision contained in section 2(d) of the proposed act, as submitted, did not contain the following language: "unless such contractor or subcontractor at the same time that he is performing work

for such employing unit performs work or is in fact actually available to perform work for anyone who may wish to contract with him and is also found to be engaged in an independently established trade, business, profession or enterprise." The proposed act, as submitted, made anyone who engaged a contractor or subcontractor the employing unit of all employees of any such contractor or subcontractor so engaged. But the legislature was unwilling to adopt this provision as submitted. Instead, it inserted the above language and thereby limited such provision so as to include, as employees of the employing unit, only the employees of contractors or subcontractors who were not at the time they were performing work for the employing unit, performing work or available to perform work for anyone who might wish to contract with them, and who were not engaged in an independently established trade, business, profession or enterprise. By the language used in defining the employees of a contractor or subcontractor who shall be regarded as employees of the employing unit, the legislature limited the application of the contractor clause so as to exempt from its provisions the employees of those whose relation to the employing unit is that of an independent contractor or subcontractor.

Section $2(f)(5)$ defines services rendered to an employing unit which shall constitute "employment" under the act. Then, by the exception, it defines services which shall constitute those performing such services independent contractors or subcontractors, who are not subject to the act, as distinguished from employees who are in employment under the act. It first declares that all services rendered by an individual shall be deemed employment subject to the act. Then, by the exception, it declares that all services performed by an individual meeting the concurrent conditions specified in subparagraphs (A), (B), and (C), shall not be deemed "employment" under the act. By affirmative language it first defines the individuals whose

services shall be deemed "employment" under the act. Then, by the language contained in the exception, it defines those whose services shall not be deemed "employment" under the act. It is true that the relation of those who are excluded from the definition of "employment" by the exception is not named or characterized. However, the conditions named in the exception create a relation which is properly designated independent contractors.

The purpose of the contractor clause in section 2(d) is to determine whether the individual rendering the services is, for the purposes of the act, to be deemed an employee of the employing unit or an employee of an independent contractor or subcontractor, who shall constitute his employing unit. (New York Life Ins. Co. v. Murphy, 388 Ill. 316.) This provision has no application to this case. There is no question here involved as to whether the individuals rendering the services were employees of the employing unit or of an independent contractor or subcontractor. If the individuals here involved were employees at all, they were employees of appellant. They were engaged directly by appellant and not through a contractor or subcontractor. They were either employees of appellant under section 2(f)(5), or they were not employees of anyone within the meaning of the act. They were engaged by appellant to render certain services. The services performed must be deemed employment unless such services are excepted from the term "employment," as provided in section 2(f)(5). If they meet the requirements of subparagraphs (A), (B), and (C) of section 2(f)(5), necessary to take the services performed by them out of the definition of "employment," as there defined, they were not employees of appellant, within the meaning of the act. It is, therefore, clear that in determining the status of an individual performing services for another and his relation to an employing unit, both section 2(d) and section 2(f)(5) must be taken into consideration and all

of the provisions contained in each given full force' and effect.

An individual may be actually employed by a contractor who, as such, is performing services for an employing unit. Then, under the contractor clause of section 2(d), he may, for the purposes of the act, be deemed an employee of the employing unit. This relation must be determined under section 2(d). If the same individual is employed by an employing unit directly, instead of through the intervention of a contractor or subcontractor, the question of whether he is an employee of the employing unit within the meaning of the act, must be determined under section 2(f)(5). The sole purpose of both sections 2(d) and 2(f)(5) is to determine whether the individual involved is an employee of the employing unit.

Section 2(f)(5)(A)(B)(C), defines individuals employed directly by an employing unit who shall not be deemed in employment and, consequently, who are not employees of the employing unit. The language by which such individuals are excluded from the definition of employment under the act describes conditions which classify those excluded as independent contractors.

In *Aluminum Cooking Utensil Co.* v. *Gordon*, 393 Ill. 542, we said: "Confusion in applying sections 2(d) and 2(f)(5)(A)(B)(C) may be caused by considering or applying the rules of common law governing employer and employee to a matter which is controlled solely by statute law. The term 'independent contractor' is not used in the act, but under certain conditions set out in the act a relation which could properly be designated 'independent contractor' is considered and removed from the designation 'employment,' with certain specific requirements as to what it takes to constitute the kind of independent contractor that does not come within the designation of being 'in employment.' It is necessary to consider the application of this relation in two places: first, in section 2(d), where

the statute defines an 'employing unit;' and second, in section 2(f)(5)(A)(B)(C), defining what service is not considered 'employment.' Since the contribution required by the statute is levied against 'employers,' (sec. 18(1),) and 'employers' are made up of employing units (sec. 2(e),) it follows there cannot be an employer unless there is an employing unit. Section 2(d) lays down the test to ascertain whether an employing unit, receiving service from a contractor or subcontractor, is receiving the benefit of services, or whether the contractor-subcontractor is the one receiving the services of others. If the latter is the case, and such contractor-subcontractor is independently established, and his services are available to others, the one liable to make the contributions is the subcontractor. (*New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316; *Arrow Petroleum Co.* v. *Murphy*, 389 Ill. 43; *Beth Weber, Inc.* v. *Murphy*, 389 Ill. 60; *Gabel Mfg. Co.* v. *Murphy*, 390 Ill. 455.) In this sense an independent contractor under section 2(d) is not entitled to receive benefits, because the one for whom he works is not an employing unit, and so cannot become an employer. Thus, section 2(d) in defining the test of the employing unit, provides the reason no mention is made of the employment status of the contractor-subcontractor in the statute, because, depending upon facts, he is either an 'employing unit' or 'in employment,' both of which are fully provided for in the act. On the other hand, section 2(f)(5)(A)(B)(C) is for the purpose of determining the employment status of an individual, since this section provides 'service performed by an individual * * * shall be deemed to be employment,' except he comes within subparagraphs (A) (B) and (C)."

The individuals here involved were not employees of a contractor or subcontractor engaged by the employing unit and, consequently were not employees of the employing unit under the contractor clause of section 2(d). Whether they were employees of the employing unit under section

2(f)(5) must be determined by applying the definitions contained in that section to the facts in the record.

Inasmuch as all the conditions enumerated in subparagraphs (A), (B), and (C), of section 2(f)(5), must concur in order to take the individual performing services out of the act, as we view the record we may, in determining whether the employees here involved were in employment within the act, pass over subparagraphs (A) and (B) and consider only subparagraph (C). Under this provision it must appear that the individual performing the services was "engaged in an independently established trade, occupation, profession or business." The proof in this record falls far short of showing that those who performed the services were "engaged in an independently established trade, occupation, profession or business." They were not so engaged. With a single exception, none of these individuals were engaged in any business activity at the time they started to work for appellant. All of them applied to appellant for work either in response to advertisements in newspapers or on the suggestion of others. They were required to do the work in the manner prescribed by appellant. They were each instructed by appellant to adopt a trade name. The adoption of a trade name was for the work of appellant and not independent of such work. The requirement of appellant of the adoption of a trade name as a condition to employment suggests an effort to by-pass the provisions of the Unemployment Compensation Act. (*Murphy* v. *Daumit,* 387 Ill. 406.) None of them at any time while working for appellant did any similar work for others. They were not engaged in an independently established business. If they had an established business it was established for the purpose of doing the work which they were employed to do for appellant and not independent of such work. They had no established business independent of the work which they did for appellant. Their businesses were established solely for

that purpose. Most of the workers were housewives. The only business which they had outside of their household and domestic duties was the work they were doing for appellant.

The facts that in some minor instances these employees engaged others to assist them, whom they paid themselves; that some of them lost money because they had to do some of the work over; that some of them called themselves partnerships; that they were paid only upon completion of an assignment of work delivered to them; that some of them listed the trade name suggested by appellant in the telephone directory, and one registered such name in the office of the county clerk, are without significance in the face of the facts appearing in the record. Without going into the requirements of subparagraphs (A) and (B) of section 2(f)(5), it is sufficient that the requirements of subparagraph (C) were not shown to exist. It may be observed in passing, however, that, as to subparagraph (A), appellant had as complete control over the work as if it had been done on its own premises and the workers had been full-time employees. Nor was the service outside the usual course of appellant's business under subparagraph (B). Advertising and selling its products through the mails was as much a part of appellant's business as the manufacture of the products sold.

The controlling facts are not substantially different from the facts in *Peasley* v. *Murphy*, 381 Ill. 187, and that case is controlling here. The fact that in the *Peasley case* the employer had obtained "Employers' Permits" and "Industrial Workers' Certificates," under the Industrial Home Work Act, does not distinguish that case on the material facts. The purpose of the Industrial Home Work Act (Ill. Rev. Stat. 1945, chap. 48, pars. 251 *et seq.*) is to restrict the character of work which may be done in homes and to regulate light and sanitary conditions in homes where industrial work is done by home workers. The only differ-

ence between the two cases in this respect is that in the *Peasley case* the employer complied with the Industrial Home Work Act, while here there was no such compliance.

Clearly, the individuals here involved were performing services for appellant which constituted employment under section 2(f)(5). It is equally clear that the concurrent conditions specified in subparagraphs (A), (B), and (C), did not exist so as to take the services out of the definition of employment found in that section of the act. The trial court did not err in quashing the writ of *certiorari* and confirming the decision of the Director.

There is no issue of fact or question of law involved on this record, or suggested in the briefs, which either requires or renders necessary a review of our former decisions, or which merits a discussion of the esoteric ideologies of statutory construction suggested in the brief of appellee.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*