(No. 28020.—

BETH WEBER, INC., Appellant, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed January 17, 1945.*

MYER H. GLADSTONE, of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This cause arises upon an appeal from a judgment of the circuit court of Cook county confirming a decision of the Director of Labor in an unemployment compensation

case, upon which judgment was entered against appellant for contributions in the sum of $537.64.

The facts are not in dispute. A stipulation was entered into at the hearing before the Director that the appellant was not an employing unit liable for the payment of contributions in 1942; that the present question was whether or not the appellant had six or more persons in its employ within twenty different calendar weeks in either of the years 1940 and 1941. The issue was whether or not an alteration woman who did alteration work on the premises of the appellant in 1940 and 1941 was employed by the appellant corporation within the meaning of the Illinois Unemployment Compensation Act.

The sole testimony offered was that of Beth Weber, the president of the appellant corporation. It appeared that, during the years in question, Arlyne Berg was a dressmaker and fitter. Appellant operated a retail dress store in Chicago during these particular years. Prior to this, Beth Weber had engaged in the retail dress business from her apartment, at which time an arrangement was entered into with Mrs. Berg whereby the latter agreed to and did perform fitting and alteration work on the garments sold by Miss Weber. In addition thereto, Mrs. Berg did alteration work for her own customers, using the premises of Miss Weber for this purpose.

When the corporation began its operation, a similar arrangement was followed between the corporation and Mrs. Berg. The latter was allotted a section of the balcony, overlooking the sales floor of the corporation, which was just large enough for a sewing machine and a small table. There, Mrs. Berg performed her alteration and fitting work for the customers of appellant and, likewise, her own customers. A sign which bore the name of Arlyne Berg and the legend "Fitter" hung on the balcony and was visible to persons who entered the salesroom from the outside but could only be seen as one entered the door. This

sign was not visible to persons on the outside of the store or after an entrance was made into the salesroom. There was no rental arrangement entered into with respect to the space Mrs. Berg occupied, the agreement being that she was to service the customers of the shop as compensation for the space occupied. Mrs. Berg furnished her own Singer sewing machine, thread and working materials.

Upon a purchase being made by a customer, Mrs. Berg was called to look at the dress and, if the item needed alteration, Mrs. Berg made the necessary measurements, set the price for the alterations and did the work of the alteration. The price charged by Mrs. Berg was added to the price of the merchandise and appellant collected the cost of the garment, sales tax and cost of alteration, giving an itemized receipt to the customer. If additional material, trimming, fittings or findings were needed, they were supplied by Mrs. Berg at her cost and same included in the cost of alteration. At the end of a week, Mrs. Berg presented an account to the appellant of moneys due her and was paid by appellant.

There were no time regulations concerning the hours of work and Mrs. Berg was free to come and go when she wished. During busy seasons, she employed a woman to help her, the expense of which was paid by her and not by the appellant. This arrangement existed during the years 1940 and 1941. The witness testified that no control was exercised with regard to the hiring of such persons; that no records were kept of the wages paid by Mrs. Berg to her assistants and that all records and accounts of Mrs. Berg were kept by her, separate and distinct from the records of the appellant.

During this time, Mrs. Berg was not listed in the telephone book as a fitter, did no advertising, had no business cards or stationery and, even though the customers failed to pay appellant for a garment after having made a down payment thereon, Mrs. Berg was paid for her work done.

Sometimes it occurred that Mrs. Berg was required to redo alteration work free of charge.

In addition to the association of Mrs. Berg, appellant leased out a portion of the store to a millinery shop for which a straight rental agreement was made and for which appellant had no responsibility for the satisfaction of customers who purchased from such millinery department. The appellant did, however, have a very definite concern with the competency of the alteration work and, to a certain extent, held itself responsible for it. It was admitted that it was not possible to run a dress shop without an alteration department.

The arrangement between the appellant and Mrs. Berg was purely oral, appellant having a right to terminate the relationship if it ever became unfriendly or unsatisfactory to customers. This is exactly what happened in the case of Mrs. Berg. Sometime during 1942, Miss Weber began receiving complaints from customers concerning Mrs. Berg's attitude. Miss Weber testified that Mrs. Berg became irritable, that she argued with Miss Weber and the customers and was not fitting clothes the way they should be fitted; that thereupon a discussion was had with Mrs. Berg relative to a correction of her attitude and when it became apparent that such improvement could not be secured, Miss Weber informed Mrs. Berg that the latter would have to leave. The appellant considered that it was responsible, to a certain extent, if an alteration was done unsatisfactorily even though the responsibility itself was entirely up to the fitter. Appellant had a very definite concern with the competency of the alteration work and wanted the customers satisfied. Thus, after Miss Weber told Mrs. Berg she would have to replace her, Mrs. Berg left and, shortly thereafter, similar arrangements were entered into with another dressmaker and fitter.

Miss Weber further testified that Mrs. Berg was free from direction or control but that no smoking was allowed

upon the premises and certain standards of conduct were necessary.

The Director's representative made a finding of fact that, during. 1940 and 1941, Mrs. Berg performed services for the appellant in which she was not free from appellant's control or direction while performing these services; that she performed them on the appellant's premises and in the usual course of appellant's business and that, including Mrs. Berg, appellant had in its employ six or more persons during twenty or more weeks in the years in question. The Director of Labor affirmed the report of the representative and confirmed the determination and assessment. The decision of the Director of Labor was confirmed by the circuit court of Cook county, the writ of *certiorari* was quashed and judgment entered in favor of the Director of Labor.

Appellant seeks a reversal of the judgment of the circuit court on the basis of the recent case of *Ozark Minerals Co.* v. *Murphy,* 384 Ill. 94, contending that the evidence conclusively shows that Arlyne Berg was an independent contractor and that the Unemployment Compensation Act does not declare that an independent contractor may be considered an employee of the employing unit.

In the cases of *Miller, Inc.* v. *Murphy,* 379 Ill. 524, *Rozran* v. *Durkin,* 381 Ill. 97, and *Peasley* v. *Murphy,* 381 Ill. 187, we have quite comprehensively considered the leading features of the Unemployment Compensation Act. This act was adopted for the purpose of alleviating, to a degree, poverty and distress that accompanies involuntary unemployment. The glossary of the act contains definitions as to who are to be considered employers, what constitutes an employing unit and what employment is within the act. The provisions of the statute differ from common-law concepts of employment where the relation of master and servant exists.

In the recent case of *New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316, we stated that the scope of the statutory purpose seeking to eliminate involuntary unemployment "is so broad that it necessarily includes all types of the unemployed, and all the relations through which compensation for services is made, without regard to the legal designation of the relations under which, previously, pay had been made for such services, the consequence of which is that the act is not designed as applying to any particular occupation, business, profession or relation, but is an original piece of legislation which creates a framework that makes parties subject to its provisions, measured by the definitions and specifications set forth in the statute. The fact that these specifications and definitions may properly embrace an employment as it is customarily understood does not prevent its including within the statutory terms those who, before its enactment, might not have been regarded as being in 'employment,' or as being employers, or those bearing the relation of independent contractors, or other relations different from that strictly of employee at common law."

The act specifies certain situations under which the parties are taken from the operation of the act. Those situations are specifically described in the act and apply (1) to the employing unit and (2) as to what services are deemed employment by an individual. The first is specifically described in section 2(d) and the other in section 2(f). Ill. Rev. Stat. 1939, chap. 48, par. 218.

Section 2(d) has recently been construed in *Ozark Minerals Co.* v. *Murphy*, 384 Ill. 94; *New York Life Ins. Co.* v. *Murphy*, 388 Ill. 316, and *Arrow Petroleum Co.* v. *Murphy, ante*, p. 43. There, it was pointed out that section 2(d) was for the purpose of ascertaining the employing unit where contractors or subcontractors were engaged, and, to make such contractor or subcontractor liable as an

employing unit, two circumstances must concur: (1) he must perform work or in fact be actually available to perform work for anyone who may wish to contract with him; and (2) be found to be engaged in an independent trade, business, profession or enterprise. If both exist at the same time, then the contractor or subcontractor is considered an independent contractor.

Applying what we have said to the facts in the instant case, we find that Mrs. Berg, although apparently performing the majority of her duties in alteration work for the customers of appellant, likewise accomplished work for others who had no connection with appellant and who independently brought their alteration work to Mrs. Berg.

Although the appellant provided a place for Mrs. Berg in which to accomplish her alteration work without any rental charge whatsoever, and although it further appears that alteration work was a necessary adjunct of appellant's business, yet, Mrs. Berg performed such work upon an arrangement whereby she secured her actual charges for services through the appellant. In other words, she could charge any amount she saw fit for the work accomplished by her, which amounts were billed by appellant to the customers and settlement made with Mrs. Berg at the end of each and every week in accordance with a statement submitted by the fitter. Employees, during rush seasons, were hired by Mrs. Berg without consultation with, or supervision by, appellant. The appellant was interested only in the result of the work accomplished by Mrs. Berg and not the means selected by her. As such, she was an independent contractor within the definition of *Ozark Minerals Co.* v. *Murphy*, 384 Ill. 94.

Although the determination and assessments made by the Director are considered *prima facie* correct, in accordance with section 25(a)(1) of the act, the court, on *certiorari*, has the power to review all questions of law and

fact presented by the record. Section 25 (a) (2) ; *Moriarty, Inc.* v. *Murphy*, 387 Ill. 119.

Applying what we have said to the facts presented by the record, we conclude that Mrs. Berg was not in employment within the scope of the Unemployment Compensation Act and that the findings of fact of the Director of Labor are against the manifest weight of the evidence.

The judgment is reversed and the cause remanded, with directions to quash the record.

*Reversed and remanded, with directions.*