(No. 28140.—)

Van Ogden, Inc., Appellant, *vs.* Francis B. Murphy, Director of Labor, (Robert L. Gordon, Successor,) Appellee.

*Opinion filed March 21, 1945—*

Charles J. Trainor, of Chicago, for appellant.

George F. Barrett, Attorney General, (William C. Wines, of Chicago, of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

The circuit court of Cook county entered judgment in the sum of $2289.44 in a proceeding on *certiorari* brought by appellant to review the findings of the Director of Labor that such an amount was due from appellant under the Unemployment Compensation Act for a period from July

1, 1937, to March 31, 1941. The only question involved here is whether the evidence establishes the relation of employer and employee between appellant and certain individuals hereinafter referred to.

Appellant has, for many years, been engaged in the business of manufacturing cosmetics, extracts, spices, etc., which it sold both to retailers generally and to individuals. The practice shown by the facts of this case involved the employment of salespeople to take orders for the merchandise from door to door, and later obtain and deliver it and collect the money therefor. The evidence of the witnesses is, without contradiction, that appellant made individual contracts with persons named Thompson, Ross and Koutek, to furnish them merchandise at a large discount from the list price, to be paid for in cash when obtained or on the day following the purchase. The evidence is that in the case of Koutek, who was the only one of the three who testified, appellant set aside a small space at its factory where Koutek had a cabinet in which was placed the merchandise furnished by appellant. He had a key to a separate entrance to the building. As he ordered goods they were placed in his cabinet. Koutek employed solicitors to canvas from door to door, taking orders. These solicitors turned over to Koutek the entire sale price of the goods they sold and were paid a percentage of the amount they obtained for the merchandise sold. Neither Koutek nor his solicitors made any returns to the State for occupation tax. So far as the record shows, such tax was paid by appellant. None of the solicitors ever came in contact with appellant or any of its officers. Appellant had no jurisdiction over any of these solicitors. The same plan existed with Thompson and Ross except that appellant rented space in other locations in Chicago where the goods each was to sell were stored, and to which each had a key. Appellant paid the rent on these storage places.

Each day a list or invoice was delivered to appellant with remittance for goods sold the previous day. This apparently was to enable appellant to keep an inventory and check on goods sold to enable it to replenish the stock so that Thompson, Ross and Koutek, referred to by appellee as agents of appellant, might at all times have sufficient stock from which to supply their solictors for delivery.

Most of the witnesses were solicitors. All of them were called by the Department. Gordon, the president of appellant, was a witness for appellant. Thompson and Ross did not testify. The witnesses who were solicitors testified they had no contract with appellant or its officers; that they were paid at the end of each week by the man they were working for, a percentage of the amount received for merchandise sold by them. It appears also that appellant supplied Koutek, Thompson and Ross with order books and price lists, which prices it established. It retained title and possession of the merchandise, giving it out to these three men only as needed to keep their inventory "standard." Appellant reserved the right to dispose of the goods or take them back to its main office at any time it desired. There was no duty on the part of Koutek, Thompson or Ross to pay for merchandise at any time unless and until the merchandise was sold. Appellant required that monthly inventories be taken. It analyzed the sales results and closed the relationship with those acting in the capacity of Koutek, Thompson and Ross at any time relations were unprofitable.

There is nothing in the record to support the statement of counsel for appellant that when once the merchandise was purchased by Koutek, Thompson or Ross, appellant had nothing further to do with it except make delivery to such purchaser, or if the purchaser sold the goods at a loss or kept them indefinitely, appellant could do nothing about it. There is evidence that on one occasion Ross,

when asked by whom he was employed, gave the name of appellant. Three of the canvassers in their testimony referred to Ross and Thompson as office managers and stated that they, the canvassers, were working for appellant.

As shown by the evidence, failure of the solicitors to turn over the money for the goods sold was a loss which generally fell upon the particular distributor, yet at times appellant furnished the distributor, without cost, additional merchandise to make up the loss. There is evidence in the record justifying the finding of the Department that Thompson, Ross and Koutek were distributors employed by appellant to perform services for it; that the services consisted of the custody of appellant's property in its warehouse leased by it and under its control, and for the distribution of which the distributors assumed the responsibility.

It is clear from this evidence that in the performance of their services Koutek, Thompson and Ross were not free from control or direction but were required to file daily reports and monthly inventories and to remit each day the funds collected. They could be discharged by appellant and were when appellant felt the sales from a particular office did not warrant maintaining the branch. It cannot be said, as argued by appellant's counsel, that the distributors were engaged in an independently established trade, profession or business. It seems apparent from the plan under operation that they did not handle their own merchandise but that of appellant. The three distributors were therefore in the employ of appellant as defined in sections 2(f)(1) and 2(f)(5) of the Unemployment Compensation Act. (Ill. Rev. Stat. 1943, chap. 48, par. 218.) The evidence also shows appellant advertised for the services of solicitors; that it prescribed the methods by which the products were sold and had knowledge of the fact that the solicitors assisted the distributors in the sale of the products. It seems clear, therefore, that the solicitors were

also in the employment of appellant under section 2(d) of the act.

The Unemployment Compensation Act, as interpreted by this court, does not depend upon the common-law concept of employer and employee or master and servant. (*Rozran* v. *Durkin*, 381 Ill. 97; *Miller, Inc.* v. *Murphy*, 379 Ill. 524.) Section 2(g) of the act defines "wages," and, insofar as applicable to the case before us, it defines that term to mean every form of remuneration payable for personal services, whether payable directly or indirectly, including salaries, commissions, bonuses, and the reasonable money value of all remuneration payable in any medium other than cash. Furnishing Koutek, Thompson and Ross with keys to doors in its factory building or rented places, the receipt by appellant of the sales price plus the occupation tax, less the percentage to be retained by such distributors and solicitors, the rental of a warehouse and insuring the stock placed therein, the repossession of articles removed from the warehouse when Ross ceased selling appellant's products, together with the fact that appellant reported and paid the occupation tax on sales made by the organizations of these men, all stamp Thompson, Ross and Koutek as employees of appellant, unless appellant has shown that each of them comes within exceptions contained in section 2(f)(5) of the act. It is necessary that they come within all three exceptions (A), (B) and. (C) of section 2(f)(5). (*Smith* v. *Murphy*, 384 Ill. 34; *Miller, Inc.* v. *Murphy*, 379 Ill. 524.) It cannot be said that either the distributors or the solicitors came within all of the conditions set out in section 2(f)(5). The record tends to establish liability of the appellant for this unemployment compensation and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*