(No. 32062.—

G. H. WALLACE *et al.*, Appellants, *vs.* FRANK ANNUNZIO, Director of Labor, Appellee.

*Opinion filed January 24, 1952.*

Perry H. Lewis, and Donald P. Vail, both of Chicago, for appellants.

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow. and A. Zola Groves, of counsel,) for appellee.

Mr. Justice Bristow delivered the opinion of the court:

Plaintiffs, G. H. Wallace and C. B. Cannon, doing business as Wallace and Cannon, are appealing from a judgment of the superior court of Cook County, entered in a proceeding under the Administrative Review Act, (Ill. Rev. Stat. 1949, chap. 110, par. 264 *et seq.*,) in favor of defendant, Frank Annunzio, Director of Labor of the State of Illinois, in the amount of $733.66 for a deficiency in plaintiffs' contributions under the Illinois Unemployment Compensation Act.

The sole issue herein is whether the individuals officing with plaintiffs' law firm, under an oral agreement, could be deemed to be employed by plaintiffs within the terms and provisions of the Unemployment Compensation Act. Ill. Rev. Stat. 1949, chap. 48, par. 218.

The facts pertaining to the alleged employment relationship are uncontroverted and are derived from the testimony of plaintiff Wallace and associate Ferd Bing, and from defendant's exhibits of plaintiffs' letterheads. Plaintiffs' patent law firm was formed May 1, 1940, succeeding the firm of Belt, Wallace & Cannon, and in 1944, pursuant to an oral agreement which was tacitly renewed each year thereafter, Ferd Bing and Daniel O'Keefe became associated with the firm. For a few months, beginning in the fall of 1945, Edwin Thomas was also an associate.

Under the terms of the oral contract, each associate had his own office in the suite, with his name on the door. The associates were required to pay plaintiffs one third of all fees received from their own cases, and, on work referred by the firm, the associates were credited on the firm books with 45 per cent of the fee, as and when it was collected. Out of this 45 per cent credit was paid the associates' proportionate share of the rent, stenographic and other services. This division of fees operated to the mutual advantage of the firm and the associates, inasmuch as substantial fees were on occasions paid to the firm from the associates' cases. The percentage allowed the associates for handling firm cases was the same as that formerly paid to Ferd Bing for work referred to him by the firm when he maintained a separate office on another floor of the building, and before he entered the oral contract with the plaintiffs. Plaintiffs at no time made social security payments on the percentage of fees credited to the associates.

Each partner and associate, as well as the firm itself, had a regular registration number with the Patent Office, so that if an application were filed by an associate for a client of his own, he used his own registration number, but where an application was filed for a firm client, the firm registration number was used. On the letterheads the names of the firm members, Wallace and Cannon, were separated from the names of the associates by a line, in accordance with the common practice in such matters.

There is no evidence of the percentage of time devoted by the associates to their own cases or to cases referred to them by the firm, or any understanding with reference thereto. Plaintiff Wallace testified that when firm members did not have sufficient time to do all the work they would refer it to one of the associates who would proceed with the project on his own initiative, without further reference to the details of performance, and upon completion thereof the associate would return it to a member

of the firm, who would thereafter deal with the client. Ferd Bing, the associate, further testified that on many occasions he would refer his own work to other lawyers outside of the suite, if he were too busy.

Although the firm and the associates could terminate the relationship if any party became dissatisfied, it was understood that because of the complicated confidential nature of the business, cases undertaken by either the associates or the firm for each other would be completed.

On the basis of substantially the foregoing evidence presented to the Director's representative, he concluded that the services of the associates in the firm matters constituted employment under section 2(f)(7) and section 2(f)(1) of the act, and did not come within the requirements of section 2(f)(5). The Director of Labor affirmed this report, and on review under the Administrative Review Act, the superior court of Cook County affirmed the decision of the Director. The court found plaintiffs indebted for contributions in the amount of $432.54, together with interest thereon, and entered judgment against plaintiffs for $733.66, from which plaintiffs have appealed to this court.

Although the findings of the administrative agency are deemed *prima facie* correct, nevertheless they must be supported by substantial evidence, and the court has power to review all questions of law and fact presented by the record. *Beth Weber, Inc.* v. *Murphy,* 389 Ill. 60; *Moriarty, Inc.* v. *Murphy,* 387 Ill. 119.

As hereinbefore noted, the essential inquiry is whether the relationship between the firm and the associates constituted "employment" within the terms and provisions of The Unemployment Compensation Act. Notwithstanding the contention of the defendant, the plaintiffs have not injected a new issue into the case by merely referring to the relationship as a joint venture, since the label in no way affects the primary inquiry.

Few problems in the law have given greater variety of application and conflict in result than cases arising in the borderland between what is clearly an employer-employee relationship, and what is clearly one of independent entrepreneurial dealing. (*National Labor Relations Board.* v. *Hearst Publications,* 322 U.S. 111.) The United States Supreme Court has emphasized the "economic reality" factor in determining whether the relationship constitutes employment, including such elements as opportunity for profit and loss, investment facilities, and permanency of the relation. (*United States* v. *Silk,* 331 U.S. 704.) A majority of State unemployment compensation laws contain the so-called "three test" provision within the definition of employment, comparable to section 2(f)(5) of the Illinois act, hereinafter set forth; nevertheless, there is still a lack of uniformity in the decisions among the jurisdictions, as well as within a single jurisdiction. 10 Ohio St. L. Rev. 153; 45 Yale L.J. 86, 88.

It is established that the statutory definition of employment is controlling, rather than any common-law master-servant concept, (*Concrete Materials Corp.* v. *Gordon,* 395 Ill. 203,) and that this definition is broader than the common-law concept, and includes, in some instances, persons classified as independent contractors at common law. (*Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542.) In reviewing the Illinois cases defining "employment" under the act, each decision must be read in the light of the statutory definition of employment at the time the law was interpreted. The relevant provisions of the applicable statute are contained in section 2 of the act, (par. 218,) as follows:

"(f)(1) Subject to the other provisions of this subsection, 'employment' means any service * * * performed by an individual for an employing unit, * * *

"(5) Service performed by an individual for an employing unit, whether or not such individual employs others

in connection with the performance of such services, shall be deemed to be employment subject to this Act unless and until it is proven in any proceeding where such issue is involved that—

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is engaged in an independently established trade, occupation, profession or business. * * *

"(7) 'Included and excluded services.' If the services performed during one-half or more of any pay period by an individual for an employing unit constitute employment, all the services of such individual for such period shall be deemed to be employment; but if the services performed during more than one-half of any such pay period by an individual for an employing unit do not constitute employment, then none of the services of such individual for such period shall be deemed to be employment."

The term "service" is not defined in the statute. However, the court has held that it must be understood to have been used in conjunction with the other provisions of the act, and does not include services otherwise excluded by the act. (*Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542; *Smith* v. *Murphy,* 384 Ill. 34.) Where the service is performed by an individual who is in reality a partner, (*Gibson-McPherson-Sutter Live Stock Com. Co.* v. *Murphy,* 384 Ill. 414,) or where the alleged employee and employer are equals, jointly interested in the project and sharing in the profits and losses, (*Donaldson* v. *Gordon,* 397 Ill. 488,) it has been held that the individuals are

performing services essentially for themselves rather than for an employing unit, and are, therefore, not in employment under the terms of section 2(f)(1), even without reference to the three-fold tests of section 2(f)(5) of the act.

In the *Donaldson case,* 397 Ill. 488, the court did not define the precise relationship between the parties, but held that it did not constitute employment, on the ground that the parties were both principals. The court stated, at page 495: "They were likewise owners of the profits, and as another element of partnership neither of them received a salary. Their interests were solely in the earnings above all costs. The contract between the parties required joint action to develop the sales territory,—one to find the work, the other to perform it,—and neither received any compensation unless there was a profit. This does not meet with the conception of wages or money received under a contract of hire. Since the parties are jointly interested, one as essential as the other, there is neither an employing unit, nor one rendering service to an employing unit, which is necessary under the act. (*New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316.) Neither of these elements exists here because one is as much a principal as the other."

Cognizance is taken of the fact that the 1937 act, cited by the court in the *Donaldson case,* defined employment as "service * * * performed for wages or under a contract of hire, written or oral, express or implied," and that this phrase does not appear in the present act. Hence the *Donaldson case* cannot be deemed conclusively determinative, even though the elements upon which the court predicated its decision are present in the instant case. Nevertheless, the remarks of the court are pertinent, since it is still necessary under section 2(f)(1) to establish that the individual is rendering services, not to himself, but to an employing unit, and "wages," as broadly defined in section 2(g), are still an integral part of the employment relation-

ship, since the amount of contributions to be paid by an employer are predicated thereon.

Under the oral contract in question, the associates did not receive any compensation unless and until the fees were paid to the firm, and even then they received a stipulated percentage of the fee from cases on which they worked, comparable to that received by outside attorneys to whom cases are forwarded under split-fee arrangements. If a fee was not paid to the firm, both the firm and the associates sustained a loss for their efforts and expenses while working on the case. Moreover, the associates were required to invest one third of the fees from their own cases in the firm; and, similarly, if such fees were not paid, the loss was shared by the firm and the associates. Under these circumstances, it appears that the relationship, viewed in its entirety, is akin to a partnership, or a series of joint enterprises whereby the parties were all principals, hence the associates were not rendering service to an employing unit under section 2(f)(1) of the act.

This conclusion is consistent with the broad purpose of the act as explained by the Commissioner of Placement and Unemployment Compensation in a note preceding the annotation of the act. (Smith-Hurd Ill. Anno. Stat. chap. 48, pars. 217-250.) It is suggested therein, in substance, that as an insurance system the act is designed partially to compensate individuals who suffer wage losses or lack of work opportunities, and, therefore, whether or not an individual comes within the protection of the act depends upon whether he is in fact subject to the hazard of a lack of opportunity to work and is dependent upon a job relationship for his livelihood. A group of professional men, such as the one under consideration, is not ordinarily beset with the hazard of unemployment to the degree that wage earners are. Professional men are usually in a position to make provision for reverses and slack periods, and, therefore, do not require legislative protection against such contingencies.

With reference to the purpose of such legislation, the Circuit Court of Appeals stated in *Ridge Country Club*. v. *United States,* 135 Fed 2d. 718, at 721: "We, too, look to the purpose of the statute and the intent of the legislature in enacting it, as well as the words used to carry out this intention. Only certain classes are beneficiaries of this social legislation, consisting chiefly of the ordinary wage earners. The statute does not comprehend storekeepers, professional men engaged in making their own livelihood, profiting or losing from the exercise of their own judgment, capital and enterprise."

It is apparent that under certain circumstances a practicing attorney may be deemed to be employed by a firm, or by another attorney within the definition of employment in the Illinois statute, or a comparable statute, as in *Walker* v. *Altmeyer,* 137 Fed. 2d 531, cited by defendant. The alleged employee therein had originally worked for another attorney on a straight salary basis and had received his office rent free, but under the new arrangement the employer rented the office to the alleged employee attorney at $100 a month, with an agreement for an hourly basis of compensation for work done for the employer, and the assurance that enough work would be provided to enable the employee attorney to earn the rent. There was no sharing of fees between the parties, as in the instant case, for irrespective of the number or amount of the fees earned by the employer attorney from cases on which the employee worked, the latter earned only so much per hour. Nor was the employee required to share with the employer any percentage of the fees earned from his own cases. Moreover, it was necessary for the employee attorney to work a specified number of hours to earn an amount sufficient to cover the rent, whereas in the case at bar there is no such specified time obligation. In effect, the employee attorney in the *Walker case* merely worked under the dominion of the employer attorney at an hourly rate, and, according to

the evidence, the nature of the work under the new arrangement was the same as it was formerly when he worked on a straight salary basis. The *Walker case,* therefore, is entirely distinguishable, and in no way disturbs our analysis of this cause.

If we regard the contract between the plantiffs and the associates, not in its entirety but in a more limited aspect, and consider the associates to be performing services for an employing unit within the meaning of section $2(f)(1)$, they still would be outside the protection of the act, since their services come within the exceptions provided in subsections (A), (B) and (C) of section $2(f)(5)$.

It is established that services performed for an employing unit will not be deemed "employment" if it is proved that the services are of such a nature that they come within the requirements of all three subsections of section $2(f)(5)$. *Toplis and Harding, Inc.* v. *Murphy,* 384 Ill. 463; *Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542; *New York Life Ins. Co.* v. *Murphy,* 388 Ill. 316.

The concept of "control" specified in subsection (A) is flexible, and has been repeatedly explained by the courts. In *Schatz, Pollack Woolen Co.* v. *Murphy,* 384 Ill. 218, the court stated, at page 221: "The control or direction that may be exercised by an employer over the services to be rendered [by an employee in determining whether the employment falls within the act] is more a matter of degree and the character of such control rather than an entire absence of it."

In the *Aluminum Utensil case* the court stated that there was a freedom from control if the responsibility was only for results, even though the other party had the right to cancel the contract for unsatisfactory work and give directions as to preparation of materials and method of payment.

In the case at bar, as heretofore noted, there was no arrangement for the amount of time to be devoted by the

associates to firm cases. Plaintiffs merely gave the associate a particular project, such as the preparation of a patent application, which the associate proceeded to execute, when and as he chose, without further direction from plaintiffs, who, ultimately, received the completed work from the associate. According to the testimony the work was conducted in much the same manner as it had been when the firm formerly referred cases to Ferd Bing under a split-fee arrangement before he entered the contract with plaintiff, and had occupied an office on another floor of the same building. Here was "freedom from control," not merely over the details of performance, in full compliance with the requirements of subsection (A). The fact that either of the parties had the right to terminate the relationship, and wind up their mutual interests in each others' cases, if performance was unsatisfactory, would not constitute "control" of the degree or character contemplated by the statute.

With reference to the requirement of subsection (B) that the service be performed outside of all the places of business of the enterprise for which such service is performed, it is a reasonable and sufficient compliance therewith that the services of the associates were performed within their own offices, and with facilities paid for by them out of a percentage of the fees credited to them. The place of performance could be regarded as though there was a landlord and tenant relationship between the parties.

In *Beth Weber, Inc.* v. *Murphy,* 389 Ill. 60, the court held that a storekeeper was not required to make contributions under the act for a fitter who was deemed to be an independent contractor. The storekeeper provided her with a place in the store, without any rental charges, where she performed alteration work at charges specified by her but collected by the storekeeper for both store customers and for her own trade.

The requirements of subsection (C) that the individuals be engaged in an independently established trade, occupation, profession or business are clearly satisfied, inasmuch as both the associates are licensed attorneys, practicing independently, long prior to their association with plaintiff.

On the basis of the foregoing analysis, it is our judgment that even if the associates are deemed to be performing services for plaintiffs under section 2(f)(1), which assumption is contrary to fact and law, nevertheless, the evidence further establishes that the services were of such a nature that they came within the exceptions specified in subsections A, B, and C of section 2(f)(5) of the act, and could, therefore, not be deemed employment. Morever, since there was no evidence as to the amount of time devoted to firm cases, it is not clear how there was a compliance with section 2(f)(7), even if the services were employment.

The judgment of the superior court affirming the assessment and determination of the Director of Labor that plaintiffs are indebted to defendant for contributions under the act, and entering judgment against plaintiffs in the total amount of $733.66 was, therefore, erroneous and is reversed.

*Judgment reversed.*