(No. 32680.—

EUTECTIC WELDING ALLOYS CORPORATION, Appellant, *vs.* FERN R. RAUCH, Director of Labor, *et al.,* Appellees.

*Opinion filed November 18, 1953.*

KLINGBIEL, J., dissenting.

ABRAMS & LINN, of Chicago, (HYMAN ABRAMS, MARK LAUTER, and FRED D. JASMER, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County confirming a decision of the Board of Review of the Illinois Department of Labor which held that

Francis Johlie, hereinafter called claimant, was eligible for benefits under the Illinois Unemployment Compensation Act, based upon his earnings for the year 1946. The action was brought in the circuit court of Cook County by the appellant, a New York Corporation, under the Administrative Review Act. The corporation appeals, bringing its cause directly to this court for review under the provision of that act. Ill. Rev. Stat. 1951, chap. 48, par. 520.

The appellant is a corporation organized under the laws of New York. During the year 1946 it was engaged in the business of manufacturing and distributing welding rods and fluxes. These were sold in Illinois during that year by a staff of sales representatives designated as field engineers. There were from nine to eleven of such representatives operating in Illinois during that year, one of whom was the claimant. Each was employed under the terms of a written contract which, in its terms and conditions of employment set forth therein, was the same for all the field engineers working in Illinois, during the year 1946.

The question for determination here is whether the services rendered during 1946 for appellant by the claimant and the other field engineers, which were similar in nature and character, and all under identical contracts, exempted them from employment as defined by the provisions of section 2(f)(5) of the Illinois Unemployment Compensation Act, (Ill. Rev. Stat. 1945, chap. 48, par. 218(f)(5),) and if any six or more of them were not so exempted, whether the appellant was an "employer" subject to either section 2(e)(1)(B) or section 2.1 of the act. Ill. Rev. Stat. 1945, chap. 48, par. 218.

Section 2(d) of the act defines an employing unit as an individual or any type of organization which had in its employ one or more individuals performing services for it. What is meant by the terms "employ" and "services" must be determined from other provisions of the act. In order that an employer may be an employing unit subject to the

act, under section 2(e)(1)(B) it must have in its employment six or more individuals who were performing services which constitute employment within each of twenty or more calendar weeks. Section 2(f)(5) defines "services" which shall constitute "employment" under the act. The exceptions contained in section 2(f)(5) take out of the term "employment" those services rendered under the concurrent conditions specified in subparagraphs (A), (B), and (C). Under this exception, in order to bring services' performed within the exception, the conditions specified in subparagraphs (A), (B), and (C), must all concur. *Concrete Materials Corporation* v. *Gordon,* 395 Ill. 203.

Section 2(f)(5) of the act provides that "Service performed by an individual for an employing unit * * * shall be deemed to be employment subject to this Act unless and until" these things are proved: "(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) such individual is engaged in an independently established trade, occupation, profession, or business."

The evidence discloses that eleven individuals performed services in Illinois for appellant for more than 20 calendar weeks, exactly in the same manner and under contracts identical in their provisions to that of the claimant's during 1946, and unless the services rendered by them were excepted from employment as defined by the Unemployment Act it is clear that the appellant would be an employer.

The appellant here contends, however, that the services rendered by the claimant and the other 9 to 11 persons were rendered in connection with independently established trades, occupations, professions or businesses as field engi-

neers and that such services were not under contract or in fact in employment for the appellant as defined under the Illinois Unemployment Compensation Act.

It is readily apparent that the term "employment" as used in the Unemployment Compensation Act is very inclusive except for certain exemptions and exclusions contained in the statute. The only exclusions with which we are here concerned are those embodied in that portion of section 2(f)(5) above set out, and which are the basis for the contention of the appellant that the claimant was not during the year 1946 in its employment.

This court has held in a number of cases that the Unemployment Compensation Act defines the class of individuals who are entitled to receive benefits, the statutory provisions being different, however, from the common-law concepts of employment where the relation of master and servant exists. Under the provisions of the act a member of the defined class is an employee unless he is excepted by the concurrence of three conjunctive subparagraphs (A), (B), and (C) of paragraph (5) of subsection (f) of section 2. (*Miller, Inc.* v. *Murphy,* 379 Ill. 524; *Parks Cab Co.* v. *Annunzio,* 412 Ill. 549.) This court has held that the Unemployment Compensation Act is not a taxing act, but is one passed to alleviate the perils of unemployment under the police powers of the State, and should receive a liberal construction. *Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Zelney* v. *Murphy,* 387 Ill. 492.

In order to determine whether or not the claimant is eligible for benefits, it is necessary to apply the statute to his contract of service and to the facts, as the statute provides. If Johlie, the claimant, and the other field engineers are not free from control or direction of the appellant in the performance of their services either under their contract of service, or in fact, they are eligible to benefits. If they are free from the control or direction of appellant, the first of the three requirements for exemption from "employ-

ment," section 2(f)(5)(A), is thereby satisfied. An examination of the contracts discloses the following provisions pertinent to the inquiry here: (1) the claimant was restricted in his services to certain restricted and specifically described territory in north Chicago; (2) the claimant was restricted as to the price for which he could sell the appellant's products; (3) he was obligated not to handle any other lines of products, and if he did that would be just cause for cancellation of the contract; (4) all orders taken by the claimant were subject to acceptance by the appellant; (5) the claimant agreed that during the term of the agreement and for two years thereafter he would not render service for any competing employment or engage on his own account in dealing in competing products or business; (6) claimant also agreed that he would not hire any person to assist him unless said person also agreed to abide and be governed by the provision of (5) above; (7) the contract also provided that if the claimant secured orders aggregating $2000 per month then the contract would remain in force for another year, provided orders during the second year amounted to $5000 per month; (8) appellant agreed to furnish claimant with advertising material concerning its products, including cuts; (9) claimant agreed that said contract could not be assigned without the consent of the appellant; and (10) claimant agreed that the appellant could cancel the contract any time he or his representative were guilty of conduct detrimental to the best interest of the appellant.

The contract remained in full force during the time the claimant acted as the sales representative of the appellant. It provided that no amendments, modifications, or additions thereof or thereto should be valid unless in writing signed by both parties and specifically stating an intent to amend, modify, or add to. There is nothing in the record to indicate that any modifications were made in the contract. Therefore, nothing can be added to nor taken from it to

ascertain what the parties intended. (*John Gabel Mfg. Co. v. Murphy,* 390 Ill. 455.) It is certainly not to be contended but that the purpose of the provisions of the contract was the exercise of certain elements of control over the claimant and the other field engineers.

The first item, defining the area for claimant to work, did limit and serve as some control over Johlie. That this court has in some instances at least regarded such a provision as an item of control is disclosed in the opinion of this court in *Murphy v. Daumit,* 387 Ill. 406, where the court mentioned that such restriction was one item of control. In that case the area in question, assigned to a vacuum cleaner salesman, was much larger, comprising the entire city of Chicago. However, in *Aluminum Cooking Utensil Co. v. Gordon,* 393 Ill. 542, where the territory included Cook and Du Page Counties, Illinois, and Hammond and Whiting, Indiana, and East Chicago, Indiana, this court did not consider the limitation as to territory any deciding element of control.

The second item set forth in the contract was that of price control. By it the claimant was restricted in his sales of the appellant's products to the prices set by the appellant. This court in *Van Ogden, Inc. v. Murphy,* 390 Ill. 133, regarded such a provision as an item to be considered in determining whether the salesmen of cosmetics were free from direction or control in the performance of their services.

The third item reserved to the appellant the right to discharge the claimant if he handled any line of products other than that of the appellant, and gave to the appellant the right to cancel the contract if claimant so violated its provisions. This court in the case of *New York Life Ins. Co. v. Murphy,* 388 Ill. 316, held that the right to discharge was the exercise of control. To the same effect is ·*Densby v. Bartlett,* 318 Ill. 616; *Bristol & Gale Co. v. Industrial Com.* 292 Ill. 16; *Kijowski v. Times Pub-*

*lishing Corp.* 372 Ill. 311. This right of discharge in the *New York Life Insurance case,* however, was limited only to the provision of prohibiting the handling of another line. By the terms of the contract in question the right is extended to a violation of any provision of the contract. This is clearly indicated by the 10th item where it is provided that the appellant could treat the agreement cancelled if the claimant violated the agreement or if in the opinion of appellant he or his representative were guilty of conduct detrimental to the best interests of the appellant. Thus if, as provided by the contract, he should during the term of the agreement render services for any competing employing unit or engage in any dealing in competing products or business, the contract could be cancelled by the appellant, or, if he should have any individual to assist him without entering into an agreement with such individual, he likewise should be restricted, or, if he should attempt to assign the contract without the consent of the appellant as provided in their contract, claimant could be summarily discharged.

The appellant in answer to the foregoing states that in spite of the contractual restrictive provision the appellant did not in fact enforce such provision. In support of this assertion appellant inferred that the claimant was interested in a foundry business with the full knowledge of appellant while subject to the above contract and no action was taken by appellant to cancel the contract. The evidence in this regard is based upon mere hearsay, not convincing as to its truth in fact, and is neither proof of claimant's engagement in an independent business, nor of inclination on appellant's part to permanently waive its contract sanctions. There is also some testimony in the record given by the appellant's sales manager that one of the field engineers, one Larwith, began selling war supplies which he hid from the sales manager, and that his contract was not cancelled. However, the record does disclose that the sales manager

testified that he let the men know they did not like for them to handle other lines. There is no satisfactory evidence that the appellant in any way relaxed their right of cancellation under the provisions for a violation of any of the provisions of the contract, or failed in fact to exercise any of the control given to them by said contract over the field engineers in the performance of their services. The appellant, in further support of its position that in fact some field engineers engaged in other activities, calls attention to testimony of their sales manager, Zeisel, in which it is stated that one Watts, who worked in Indiana, had a farm, that another, Wolters, who worked in Missouri, had a farm, that another, Brown, had some sort of business, that Larwith sold war supplies, and that Johlie, the claimant, had a foundry. We have examined the record, and find that all the evidence in this respect is entirely unsatisfactory and largely based on hearsay. The contract further provides that the appellant not only reserved the right of cancellation of the contract in the event the field engineer should render service to competing lines, but also provided for injunctive relief and damage in the event of any violation of the paragraph forbidding them to render service to competing lines.

It is clear, therefore, that the said contract did provide for very substantial control of the field engineers, including the claimant, Johlie.

The appellant urges that it is difficult to conceive of an employment where the employer does not exercise some control or discretion over the performance of the services, and that the application of subparagraph (A) of section 2(f)(5) should not be construed to mean a complete absence of control, but that the control must be considered in the light of its character and degree. (*Schatz, Pollack Woolen Co., Inc.* v. *Murphy*, 384 Ill. 218.) We do not disagree with the above pronouncement nor with its application in the case cited, because the facts therein dis-

close that the control and direction exercised by the employer were very slight and of no great consequence. The appellant takes the position that the same is true in the instant case, and that facts disclose that both under the contract, in spite of its provisions, and under the actual fact situation the control and direction over the claimant and the other field engineers were of a slight degree.

In taking the above position the appellant called attention to the facts in the record to the effect that the claimant and the other field engineers choose their own itineraries and work hours, are free to accept or reject advice, are not required to submit reports or attend sales meetings, and are at liberty to devise and follow their own sales methods. They do their own advertising, are free to hire their own employees, and to rent their own space. They contend that although the contracts provide for sales quotas, they are no more than goals for the men to shoot at, and, although Johlie did not make his quotas, the contract was not cancelled and it was he who terminated his relationship with the appellant.

There are many facts in the record that dispute much of this freedom from control asserted by appellant. It is disclosed that the performance of the work of the claimant was reviewed by supervisors. The assistant sales manager of the company, who resided in Wisconsin, spent 25 percent of his time in Illinois, traveling about and with the field engineers, furnishing assistance wherever he could. While the method and techniques of sale were altogether a matter for the claimant and the other field engineers, nevertheless they submitted reports which the assistant sales manager read, analyzed and upon which he submitted advice and suggestions based thereon. The field engineers were given instructions as to the exact areas in which they were to operate. The appellant knew the amount of business the area should produce and fixed the quotas to determine if the claimant and the engineers were devoting their time to

their job. The record discloses that one field engineer's contract was not extended because he did not do sufficient business. The men were furnished with calling cards with the name of the appellant thereon and that of the claimant with his address and telephone number. There are many other and various facts in the record to indicate that in fact a close and constant control and direction were exercised over the field engineers. In *Murphy* v. *Daumit,* 387 Ill. 406, we find the following language used by this court: "We find here that appellant's suggestions and recommendations as to the methods of procedure and salesmanship were mere recommendations as long as they were followed by the salesmen, but, if not so followed, were coupled with the power on the part of the appellant to discharge the individual."

The final claim of appellant is that the case of *Aluminum Cooking Utensil Co.* v. *Gordon,* 393 Ill. 542, decided by this court is controlling. This court therein held that a distributor was appointed to sell "Wear Ever" specialties in a defined territory. He was loaned a sample outfit for display and given a price list of "Wear Ever" goods. He agreed to send reports in each week on a form furnished, and upon failure to report the company reserved the right to cancel the contract. The contract contained a further and specific provision that the company did not reserve any direction or control with respect to the distributors' activities, other than the right to question the sufficiency of the results accomplished by the distributor as measured by the requirements of the contract.

It is apparent that there are fundamental differences between the *Aluminum Cooking Utensil case* and the instant case. There is no noncontrol clause in the instant case. Additional provisions are present in the instant case, such as the nonassignment clause heretofore set forth, a prohibition from handling other lines at the same time, and an exclusive effort on the part of the distributor for the com-

pany. In the case at bar the contract provided in part as follows: "Your duties will be to sell and promote in said territory, the goods and products of the Eutectic Welding Alloys Company. You understand that your handling of any other line will be just cause for us to cancel this agreement." Furthermore, the contract also in this case provided that the claimant and the other field engineers would not at any time during the term of the agreement and for two years thereafter in the territory assigned them enter into the employment of any other person dealing, in any competing products. It was also provided that the claimant was not for two years after the term of the agreement to engage in a competing business. By the terms of the contract it was agreed that the appellant would be entitled to injunctive relief and damages in the event of breach of any provisions of this paragraph. No such provisions appear in the *Aluminum Cooking Utensil case*.

The instant case is also further distinguishable from the *Aluminum Cooking Utensil case* in that the appellant has sales meetings, pays the expense of the claimant and the other field engineers who attend them, and gave advances to the claimant and other field engineers for either personal or business reasons. When Johlie, the claimant, and the other engineers, ceased to operate for the appellant they became unemployed. They had no other business, no proprietary interest in the business of the appellant, were not free to work for other businesses or lines, had nothing which they could sell or assign.

The appellant refers to that provision of the contract which states that the field engineers "act only as an independent contractor during the entire period thereof," and contends that it conclusively discloses that the claimant and the other field engineers were free from control and that the Unemployment Compensation Act does not apply. This court in the recent case of *Parks Cab Co.* v. *Annunzio,* 412 Ill. 549, used the following language:

"The Unemployment Compensation Act deals with realities of economic life. It is with these same realities that we are concerned in determining questions which arise in the course of its administration. Issues as to status are determined by applying the terms of the statute to the facts as they exist, and in that process the characterizations which the parties apply to their relationships do not control. So we have disregarded the designations applied by the parties, pointing out that their 'relationship must be determined from all of the actual facts in evidence.' *Murphy* v. *Daumit*, 387 Ill. 406, 415.

"We are not here bound by the 'independent contractor' label which the company and the drivers have applied to their relationship."

There are several areas of dissimilarity of factual situation between the instant case and the *Aluminum case*, as noted above. However, both cases are concerned with the application of the same sections of the act, and in the application thereof differ markedly in result. It is the opinion of this court, therefore, that in all those respects in which the *Aluminum case* differs from the pronouncements of this case, the former is hereby expressly overruled.

There is such control and direction retained by the appellants as to cause it to fail to meet the requirements of section 2(f)(5)(A) of the act for exclusion from the definition of "employment."

The exclusion requirements of subparagraph (B) cover the situation where the service is either outside the usual course of business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such business is performed. The business of the appellant was that of manufacturing and supplying welding rods and fluxes to metal fabricators through the medium of sales upon orders received either directly by mail or taken by "field engineers," who called on the customers. Certainly, the service performed by claimant was within the usual course of, and

formed a part of, the company's usual course of business. (*Rozran* v. *Durkin,* 381 Ill. 97.) Appellant further contends, however, that claimant performed services outside of all the places, of business of the enterprise. All those persons denominated "field engineers" by appellant were assigned a territory within which they were to call on customers to advise on welding problems and obtain orders for welding rods and fluxes. Where the employing unit assigns a specific area to an individual for the purpose of selling its product or representing its interest, that area is the place of business of the enterprize. (*Murphy* v. *Daumit,* 387 Ill. 406.) That is especially true where the employing unit maintains no office or center of business in the area but confines its activity to acquiring orders for its product throughout the area. We are of the opinion that the exception of subparagraph (B) is not applicable to claimant's situation as evidenced by the record.

Appellant urges that the claimant and other field engineers were engaged in independently established trades within the meaning of section· 2(f)(5)(C). It is specifically urged that claimant Johlie had a foundry business. We have already determined that the proof offered by appellant to support their assertions as to claimant and several other field engineers was mere hearsay evidence and entirely unsatisfactory. Not only does appellant fail to prove that claimant was established in an independent trade, but appellant offered evidence that only four of their field engineers in Illinois, including claimant, were ever engaged in an independent trade. Appellant had eleven men working as field engineers in Illinois, thus leaving seven unaccused of independent activity. Having established a failure to prove Johlie was so engaged, we find that at least eight field engineers in Illinois, including claimant, were not within the prohibition of subparagraph (C).

Having failed to concurrently satisfy the requirements of section 2(f)(5)(A), (B), and (C), we must necessarily determine that claimant is not excluded from "employment"

by appellant. Only those services which meet the requirements of subparagraphs (A), (B), and (C), are excluded from "employment." Necessarily, therefore, claimant was employed by appellant during 1946 in Illinois, as were at least six other persons. Appellant was, likewise, an employer under the provisions of the Unemployment Compensation Act. Claimant, Johlie, is therefore entitled to unemployment benefits based upon his earnings from the appellant during 1946. Accordingly, the judgment of the circuit court of Cook County, confirming the decision of the Board of Review of the Department of Labor, is hereby affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLINGBIEL, dissenting.